Burke, J.
On June 17, 1963, the Palisades Interstate Park Commission and the State of New York appropriated 28.11 acres with improvements thereon pursuant to section 676-a of the Conservation Law. The land was owned by claimants Weintraub. It was improved with a building leased to claimant Chester Litho *325 Corp. for a period of 10 years commencing January 1,1960, with two five-year options to renew. The corporation was wholly owned by claimants Weintraub. After the date of appropriation the tenant remained in possession and continued to operate its lithography plant until July 9, 1963, when the building and fixtures were damaged by fire. The fire was not deliberately set, and appellants failed to prove that claimants were negligent.
The only issue before the court is whether the buildings and fixtures which were destroyed are compensable items. Appellants contend the claimants were required to surrender the appropriated property and that, consequently, claimants bore the risk of loss until such surrender.
Condemnation has been recognized as the equivalent of an enforced sale (Jackson v. State of New York, 213 N. Y. 34, 35; Bell Tel. Co. v. Parker, 187 N. Y. 299; Vandermulen v. Vandermulen, 108 N. Y. 195; Story v. New York El. R. R. Co., 90 N. Y. 122). Upon the filing of the description of the ‘‘property which is deemed necessary for park * * * purposes” (Conservation Law, § 676-a, subds. 2, 3), the taking is complete (Kahlen v. State of New York, 223 N. Y. 383). It is at the time of the taking when the amount of damages “is to be measured and fixed” (Wolfe v. State of New York, 22 N Y 2d 292, 295; see also, Kahlen v. State of New York, 223 N. Y. 383, supra; Jackson v. State of New York, 213 N. Y. 34, supra), and subsequent fluctuations in value, either increases or decreases, should not be considered (Matter of Munson, 29 Hun 325, 335).
It is within this basic framework that the question of who bears the risk of loss should be decided. If this were a sale in fact, the risk would be upon the purchaser, here the appellants, under either the Uniform Vendor and Purchaser Risk Act (General Obligations Law, § 5-1311, subd. 1, par. b) or the common law (Reife v. Osmers, 252 N. Y. 320). Pursuant to the more stringent statutory provision, the risk passes with either title or possession. The filing here vested title to the property, and it effected the taking (Conservation Law, § 676-a, subd. 8). Hence, the date of the acquisition by appropriation should determine the rights of the parties (Kahlen v. State of New York, 223 N. Y. 383, supra).
Appellants argue that the analogy to the transfer of risk on a voluntary sale is invalid because the vendee who has accepted title may bring a special proceeding for immediate possession *326 (Real Property Actions and Proceedings Law, § 713, subd. 8), and appellants could not enter the condemned property until the expiration of statutory periods (Conservation Law, § 676-a, subd.. 11). The argument disregards the statutory notice to quit which is required by a purchaser (Real Property Actions and Proceedings Law, § 713). It also fails to consider the contract of sale, which document may provide for a separation of title and possession. That lapse, when the taking is accomplished by filing, is provided by statute.
Aside from these paralleling factors, however, the argument fails to consider the choice available to condemning authorities. Appellants could have acquired the subject property by giving notice of intention to take (Conservation Law, § 747 et seq.). Title and possession would coincide (Conservation Law, § 759), and the landowner would bear the risk of loss in the interim. Having opted for the advantages of acquisition by appropriation, appellants must bear the incidental consequences. We hold, therefore, that the risk was borne by the condemnor.
No unfair burden is placed upon appellants, for, if they intend to utilize a condemned building, they have an insurable interest for their protection. Appellants ’ argument that they should not be required to insure the property for the benefit of the condemnees is untenable. If, as would appear to be the case herein, they intend to demolish any existing structure, they have suffered no loss.
Appellants argue by analogy that recovery should be denied for the value of the destroyed property herein just as interest is denied to a condemnee who retains possession (La Porte v. State of New York, 6 N Y 2d 1); recovery for the decrease in rental value is denied for a temporary easement from the date of appropriation to the date of entry (Great A. & P. Tea Co. v. State of New York, 22 N Y 2d 75, 87, 89); and recovery is denied for the value of fixtures which are removed from condemned property without the condemnor’s prior consent (Great A. & P. Tea Co. v. State of New York, 22 N Y 2d 75, 90-91, supra). The comparisons, however, are not valid.
Since interest is awarded to compensate for the deprivation of the use of property and the condemnee in possession has not been deprived of such use, an award of interest would provide a double recovery which the law will not tolerate (La Porte v. State of New York, 6 N Y 2d 1, 6-7, supra). Similarly, the award for the *327 decrease in rental represents a loss caused by the interruption with the use of the property, which loss is not sustained until entry (Great A. & P. Tea Co. v. State of New York, 22 N Y 2d 75, 87, 89, supra). Because the award to claimants represents a single recovery of damages sustained by the taking of their property, the analogy fails.
Finally, in Great A. & P. Tea Co. (22 N Y 2d 75, 90-91, supra), the court held that by voluntarily removing fixtures, the claimant had elected to treat the property as personal in nature. The voluntary conversion to personalty precluded any recovery. Inasmuch as the destruction here was not the voluntary, or even negligent, act of claimants, there has been no comparable election.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed, with costs.