JESSICA KRAVEC et al., as Coexecutors and Cotrustees of STE-
PHEN KRAVEC, Deceased, Appellants-Respondents, v STATE
OF NEW YORK, Respondent-Appellant. (Claim No. 53007.)

Fourth Department, April 15, 1976

*Alderman, Alderman, Samuels & Schepp (Bernard Samuels* of counsel), for appellants-respondents.

*Louis J. Lefkowitz, Attorney-General (Dennis Hurley* and *Ruth Kessler Toch* of counsel), for respondent-appellant.

DILLON, J. In 1968 the State of New York appropriated a permanent drainage easement over claimants' vacant, irregu-

larly shaped lands consisting of 15.090± acres in the Town of DeWitt, Onondaga County. The easement traversed the southeasterly portion of the property and was 21 feet wide and 537 feet long. The easement reads in part: "A permanent easement to be exercised in, on and over the property above delineated and hereinafter described for the purpose of constructing, reconstructing and maintaining thereon a drainage ditch, drainage structures and appurtenances in and to all that piece or parcel of property".

Its reservation clause provides as follows: "Reserving, however, to the owner of the property described above, and such owner's successors or assigns, the right of using the said property, providing the exercise of that right by such owner, his successors or assigns, does not interfere with or prevent the user and exercise of the easement rights as above described and defined."

Claimants contend that this easement prohibited legal access to the interior 9.217± acres of their property which was bounded by a pre-existing county easement in one area and otherwise by privately owned lands.

The county easement, granted in 1949 by claimants' predecessor in title, provided in part: "[for] a perpetual right of way and easement on, over, in, under and across the premises of the first party on a strip of land hereinafter described, and to construct, lay, re-lay, repair and forever maintain on, in, over, under and across said hereinafter described strip or parcel of land, a public sewer or sewers and/or to use the same for any other public purposes which the said second party, its successors or assigns may hereafter determine for itself or any improvement or special district, and to make such excavation and to perform such work thereon as may be necessary or proper according to the decision of the second party, its successors and/or assigns, in the laying and/or re-laying, construction and/or reconstruction, maintenance, operation and for the care and protection of said sewer or sewers and/or other public use."

This easement was 16 feet in width and 303 feet in length. It traversed the southwesterly portion of claimants' property and continued southeasterly therefrom through Kravec Drive. In 1962 Kravec Drive had been granted by claimants to the Town of Dewitt, subject to the county sewer easement.

Claimants urge on this appeal that because access to their property was denied by the State appropriation they did not,

therefore, receive just compensation. The State cross-appeals on the ground that the trial court erroneously found that the claimants had no legal right to cross the county easement. Neither party contests the valuation method employed by the trial court, which was supported by the expert testimony and had a factual basis (*Clearwater v State of New York,* 30 AD2d 883, affd 23 NY2d 1006; *McNitt v State of New York,* 24 AD2d 544).

Claimants maintain that the State easement must be interpreted as was the easement in *Wolfe v State of New York* (22 NY2d 292). The drainage ditch easements there, however, "left it to the Superintendent of Public Works (or some other authorized official) to say whether the 'right' [to use the property appropriated] which the owner may choose to exercise interfered with the easement acquired by the State" (p 296).

The easement here is not so restricted. Under its terms claimants have the right to use their property provided they do not interfere with the exercise of the State easement. The nature and extent of claimants' right of use is not subject to unilateral definition by the State since no limitation greater than the public use requires may be placed upon claimants' rights. (*Jafco Realty Corp. v State of New York,* 18 AD2d 74, affd 14 NY2d 556; *Matter of City of New York [Steinecke],* 47 AD2d 644.)

The precise question is whether claimants' right to use the property as set out in the reservation clause of the easement includes a right of access. Its resolution is dependent upon the public use to be accommodated by the easement and the language used to explain it, bearing in mind that easements are to be construed strictly against the State. (*Jafco Realty Corp. v State of New York, supra; Clark v State of New York,* 20 AD2d 182, affd 15 NY2d 990.)

The public need here is for a drainage ditch and the language of the easement is incapable of broader construction. Moreover, the State contends that the easement does not impair the claimants' right of access and that the exercise of that right by way of bridging would not affect the drainage. Our acceptance of the State's position will prevent the State, by virtue of the doctrine of equitable estoppel, from making any inconsistent or conflicting claim in any subsequent proceeding. (*Clark v State of New York, supra,* p 190; *Wolfe v State of New York, supra,* pp 296-297.) Should the State seek

to expand its use beyond the terms of the easement it "will have to answer for a *de facto* appropriation" *(Jafco Realty Corp. v State of New York,* 14 NY2d 556, 557).

Certainly the construction of a drainage ditch does not render access a physical impossibility as it is easily capable of being bridged. It is likewise apparent that the public purpose fulfilled by the easement does not require that the claimants be denied access, for the claimants' access will neither impede nor impair the public use. Accordingly, this easement must be read as reserving to claimants the right of access to their interior lands as an incident to their right of use. The State has conceded as much by its representations to claimants and by acknowledging cost to cure damages of $3,800 for bridging the easement.

The trial court also correctly found that the Onondaga County easement barred the claimants from access over or through it. This easement was created by grant and its terms are clear and unambiguous. The county acquired a perpetual easement not only to construct and maintain a sewer, but also for "any other public purposes which [it] * * * may hereafter determine". The grant contains no reservation of rights to the claimants' predecessor in title. Where the intention as to the extent of an easement is clearly evidenced by certain and unambiguous language a contrary intent may not be implied *(Antonopulos v Postal Tel. Cable Co.,* 261 App Div 564, affd 287 NY 712; *Miller v Edmore Homes Corp.,* 285 App Div 837; *Nash v Moller,* 141 NYS2d 43).

The State contends that the county's historical use of this easement as an underground sewage line, its lack of intent to expand upon that usage and the claimants' improvement of the interior land beyond the easement demonstrate that neither of the parties contemplated any interference with access over it. However, evidence of past conduct under the easement and the present intention of the county with respect to its future use are not determinative of what the county has a right to do under its terms (cf. *Northwest Quadrant Pure Waters Dist. No. 1 v Payne Beach Assn.,* 38 AD2d 668). Examination of the behavior of the parties will neither diminish the rights defined in the easement nor allow the court to disregard the language of the conveyance (3 Powell, Real Property, par 415, p 507).

The judgment should be affirmed.

CARDAMONE, J. (dissenting). The State appropriated a permanent easement "in, on and over" claimant's land. The majority hold that claimant's right to use the property as set out in the reservation clause of the easement includes a right of access. We cannot agree. The easement is defined in exceedingly broad terms. The reservation clause conditions claimant's right to use its property provided it does not interfere with the exercise of the State's easement and, as such, neither diminishes the scope of the permanent easement nor renders the description of the easement ambiguous *(Wolfe v State of New York,* 22 NY2d 292; *Wayside Nurseries v State of New York,* 36 AD2d 212, affd 34 NY2d 876).

The majority rely upon *Jafco Realty Corp. v State of New York* (18 AD2d 74, affd 14 NY2d 556) and *Clark v State of New York* (20 AD2d 182, affd 15 NY2d 990). Both of these cases were distinguished, however, in *Wolfe v State of New York (supra,* p 296) because they involved easements which on their face, as well as by necessary implication, reserved access to the claimant. In the instant case, unlike *Jafco* and *Clark,* the reservation clause does not expressly grant claimant the right of access. Further, there is uncontradicted testimony in the record which shows that in order for claimant to construct a bridge or culvert over the State's easement for purposes of access, claimant would first have to obtain a permit from the State Department of Transportation. The assertion that claimant need only apply to the State for such a permit and that it would be granted cannot be construed as equivalent to a reserved express right of access to the parcel *(Gluckman v State of New York,* 37 AD2d 870). In the present case, as in *Wolfe,* claimant's right of access is conditioned upon first obtaining the approval of the State Department of Transportation (the Department of Public Works, referred to in *Wolfe,* was abolished and its functions transferred to the Department of Transportation by chapter 717 of the Laws of 1967). The claimant here is required to obtain a permit to construct a bridge or culvert over the State's easement to gain access to his otherwise landlocked parcel. Such a permit is merely a license terminable by the State if it develops that claimant's permit interferes with the State's construction of "drainage structures and appurtenances" "in, on and over" its easement. As noted in *Wolfe,* it is not reasonable to expect claimant to construct an access bridge under such conditions without some further grant from the State *(Wolfe v State of New York, supra,* p 297).

Since the State's easement is exceedingly broad, any action by the claimant thereon might be deemed by the State to interfere with its rights. The easement in this case potentially denies claimant the right of access (cf. *Matter of City of New York [Steinecke],* 47 AD2d 644, 645). Damages are fixed and measured at the time of the taking *(Chester Litho v Palisades Park Comm.,* 27 NY2d 323, 325), and must be assessed on the basis of what the State has actually taken, whether or not it intends to use any or all of the property acquired *(Wolfe v State of New York, supra,* p 295; *Wayside Nurseries v State of New York, supra; Manlius Center Road Corp. v State of New York,* 49 AD2d 685). In view of the broad language of the easement, without an express grant of access in the reservation clause, the State has actually landlocked claimant's land and should award damages accordingly. In our view, this case should be remitted to the Court of Claims in order for it to ascertain the amount of such damages.

MOULE, J. P., and SIMONS, J., concur with DILLON, J.; CARDAMONE and WITMER, JJ., dissent and vote to reverse judgment and remit case to Court of Claims for purpose of ascertaining damages in accordance with opinion by CARDAMONE, J.

Judgment affirmed, without costs.