OPINION OF THE COURT
Jerome F. Hanifin, J.
In 1959, the State appropriated a permanent easement in a streambed located on claimants’ property for which an award was made. (Burdick v State of New York, Ct of Claims, Aug. 26, 1963, Heller, J.) The easement was taken for the purpose of “constructing, reconstructing and maintaining *** a stream channel and dike” in order to provide drainage for an adjacent highway. Rights reserved to the owner included the “right and privilege of using this property *** providing the exercise of such right and privilege does not, in the opinion of the superintendent of public works or other authorized representative acting for the people of the state of New York *** interfere with or prevent the user and exercise of the rights hereinbefore described.”
Between May 23 and June 21, 1978, the State Department of Transportation (DOT) and Chemung County entered onto claimants’ property pursuant to the easement for the purpose of cleaning the streambed and emptying it of excess sand and gravel that naturally accumulates in *1035 the process of stream activity. The claimants observed the work being performed by the maintenance crews and also observed that the DOT and county were processing part of the gravel removed from the stream by cleaning it, running it through a shaker, and then hauling it away and stockpiling it. The claimants thereafter brought this claim ¿gainst the State for wrongfully converting the gravel to its own use.
At the trial, Fred Ames, Jr., resident engineer for the DOT, was called on behalf of the State and testified that one of the State’s sources of gravel for use in its various projects is from stream channel maintenance such as occurred in this case. In the memorandum of law submitted on behalf of the State, the Attorney-General concedes that the State removed gravel from the streambed, processed it, and stockpiled it for later use.
The county apparently entered the picture because the DOT did not have the equipment and men available to do the job. The DOT entered into an informal agreement with the county whereby the county furnished most of the equipment and manpower in return for the right to the bulk of the gravel processed and removed from the site.
The question arising from the facts in this claim is whether the 1959 easement permits the State to remove and process gravel from the claimants’ streambed, and then to store the gravel for later use. The court finds that it does not.
An easement appropriated by the State must be strictly construed against the State. (Kravec v State of New York, 51 AD2d 484, revd on other grounds 40 NY2d 1060.) In the Kravec case, the State appropriated an easement for the purpose of “‘constructing, reconstructing and maintaining thereon a drainage ditch’” (51 AD2d, at p 485). The court stated (p 486) that “[t]he public need here is for a drainage ditch and the language of the easement is incapable of broader construction.” Similarly, in the case of Fitch v State of New York (27 Misc 2d 108, 109), the State appropriated an easement for the purpose of “ ‘constructing, reconstructing, maintaining and operating thereon an access drive with the right at all times of ingress, egress *1036 and regress’”. The court stated (p 110) that “[n]othing more is taken by this easement than the limited right to ‘construct, reconstruct, maintain and operate an access drive for the purpose of clearing and snagging the river’. Should the State enlarge upon the terms of the easement to the detriment of the claimants, then the State would have to respond in further damages.” (Cf. Hallock v State of New York, 32 NY2d 599.)
Since the easement in this case must be narrowly construed, it is clear that the State acquired only the right to maintain and preserve the streambed to facilitate drainage. The acquisition, therefore, would include the right to excavate gravel that impairs the drainage process and use it to build up the stream banks. The right to maintain the streambed does not, however, include the right to process, retain, and store the gravel for later use on other projects. Since this is precisely what was done, the State must respond in damages for conversion (see Mendelson v Boettger, 257 App Div 167, 170, affd 281 NY 747; 10 NY Jur, Conversion, § 11). Further, it is clear that those damages must include the value of the gravel removed by the county since the county would hardly have removed the gravel from claimants’ property absent the direction and supervision of the DOT.[1]
In certain cases, the measure of damages for wrongful removal of gravel is the value of the processed gravel. This is so because money and/or labor expended by the converter in processing property wrongfully taken is not deducted from the damages, since the converter is treated as a servant of the owner in determining the amount of damages (Baker v Hart, 52 Hun 363, revd on other grounds 123 NY 470). This rule is applicable, however, only where the converter acts in bad faith. (See Restatement, Torts 2d, § 927, subd [2], par [a]; 10 NY Jur, Conversion, § 77; *1037 Measure of Damages for Wrongful Removal of Earth, Sand, or Gravel from Land, 1 ALR3d 801, § 2, subd [a]; § 4, subd [b]; Matter of Klippel, 83 NYS2d 816.) In the court’s opinion, the representatives of the State believed, albeit mistakenly, that they had a right to remove the gravel pursuant to the easement. In fact, it appears that the State had been removing gravel from claimants’ property with some regularity since the easement appropriation in 1959. Claimants apparently protested on some prior occasions but failed to persuade the State’s representatives that they were acting illegally. It is interesting to note that the State did not claim a right to remove the gravel by virtue of adverse possession (see, e.g., Ostrander v Bell, 199 App Div 304, affd 234 NY 566), apparently secure in the knowledge that the easement grant was legal authority to do so. Since the State representatives acted in good faith, claimants are entitled only to the in-place value of the gravel actually removed.
Based on the evidence adduced at trial, the court finds that the value of the gravel in place of claimants’ property in 1978 was 50 cents per cubic yard.
The evidence as to the amount of gravel excavated and taken by the State is imprecise. However, it appears that on May 24, 1978, two trucks were utilized for eight hours each hauling gravel away from the streambed; on June 8, one truck was used for eight hours; on June 9, three trucks were used for eight hours each; on June 12,[2] one truck was used for eight hours; on June 13, two trucks were used for eight hours each; on June 20, two trucks were used for eight hours each; and on June 21, two trucks were used for eight hours each. Mr. Ames, the State’s resident engineer, testified that the trucks carried about six cubic yards of material per load, but could carry as much as eight cubic yards. It is impossible to fix precisely how many cubic yards the trucks were carrying on any given load, but after carefully reviewing all of the evidence, the court finds that the trucks carried an average load of seven cubic yards.
The next factor to be determined is the number of loads of gravel removed from the claimants’ property on the days *1038 the State trucks were working. State trucks worked several eight-hour days on the project and transported material about one or two miles for stockpiling. On the other hand, the trucks were also used to haul gravel larger than two inches in diameter which would not pass through the shaker and which was left within the easement area. It seems reasonable to conclude that the trucks hauled at least one load an hour to the stockpiling site, or eight loads per day.
Therefore, a total of 13 trucks hauled gravel away from the streambed, each carrying eight loads, for a total of 104 loads, or 728 cubic yards. The foreman for the county on the job estimated that the county removed 5,577 cubic yards of gravel. At 50 cents per cubic yard, claimants sustained damages in the amount of $3,153 (728 + 5,577 = 6,305 x $0.50).
Accordingly, claimants are awarded the sum of $3,153, with interest, from June 21, 1978 to December 21, 1978 and from May 22, 1980 to the date of this decision and thereafter pursuant to CPLR 5001 and 5002, and subdivision 1 of section 19 of the Court of Claims Act.

. Whether claimants could have excavated gravel from the streambed pursuant to the reservation of rights clause is not a question decided by the court. The court merely holds that the easement did not allow the State, or its agents, to process and use gravel excavated from the streambed for use other than in connection with preservation of the stream channel or dike. It should be noted, however, that if claimants did remove gravel from the stream channel and the DOT concluded that such removal impaired the integrity of the drainage easement (i.e., no doubt too large a channel could create as serious a problem as a clogged one), it is foreseeable that claimants might find themselves defendants in an injunction proceeding.

. Incorrectly referred to as June 1.