J. Reid BINGHAM, as Ancillary Administrator of the Estate of Robert Nesta Marley, Plaintiff,

v.

Marvin ZOLT; Zolt & Loomis, P.C.; David J. Steinberg; Bluestein, Rutstein & Mirarchi, P.C.; Greenstein, Gorelick, Price, Silverman & Laveson; Martin Oliner; Martin Oliner, P.C.; and Coudert Brothers, Defendants.

COUDERT BROTHERS; Martin Oliner; Martin Oliner, P.C.; and Bluestein, Rutstein & Mirarchi, P.C., Third–Party Plaintiffs,

v.

Rita MARLEY and Mutual Security Merchant Bank and Trust Company, Third–Party Defendants.

No. 86 Civ. 9477 (KC).

United States District Court, S.D. New York.

June 16, 1993.

Robert Brundige, Jr., Hughes, Hubbard & Reed, New York City, for plaintiff.

Ray Beckerman, Gallet Dreyer & Berkey, Robert Brundige, Jr., Hughes, Hubbard & Reed, Kathryn Keneally, Kostelanetz Ritholz Tigue & Fink, Adam Simms, Brody & Fabiani, New York City, James Nunemaker, Rivkin Radler Bayhe Hart & Kremer, Uniondale, NY, Jeremy Mishkin, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, Kaare Phillips, Grais & Phillips, Paul D. Friedland, Coudert Brothers, New York City, for defendants.

## OPINION AND ORDER

CONBOY, District Judge:

This case was tried over a period of twelve weeks before a jury, which returned a verdict in favor of the plaintiff, J. Reid Bingham, and against two of the defendants, Marvin Zolt and David J. Steinberg. Currently before the Court are several post-trial motions from different parties to the litigation. This Order addresses the motions of David J. Steinberg and Marvin Zolt, the plaintiff's request to order the registration of this Judgment in the district of Pennsylvania, and the plaintiff's application for attorneys' fees and disbursements.[1]

### A. Statute of Limitations

#### 1. RICO Claims:

■ Defendants claim that plaintiff's RICO claims are barred by the statute of limitations because the jury found that the Estate had actual knowledge of the defendants' wrongful acts by December 10, 1982. Defendants' argument, however, ignores the fact that under applicable Second Circuit law, the Estate's RICO claims are timely as to all RICO injuries suffered by the Estate within the four-year limitation period. *See Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir.1988) ("a plaintiff may sue for any injury he discovers or should have discovered within four years of the commencement of his suit, regardless when the RICO violation causing such injury occurred." *Id.* at 1103), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). Since the jury expressly found that all of the RICO damages occurred after December 31, 1982, the Court finds that all of the separate RICO injuries found by the jury occurred within four years of the commencement of the suit on December 10, 1986.

The Court observes that the fact that the plaintiff had actual knowledge of the wrongful acts by December 10, 1982 does not bar the RICO claims. The Second Circuit has made clear that the separate accrual rule is discrete from the issue of plaintiff's knowledge of the underlying RICO violations. For example, in *Bankers Trust*, the Court held that plaintiff could "recover for any injury it discovered or should have discovered on or after August 24, 1978" [four years prior to the suit], despite the fact that plaintiff first became aware of defendants' fraud in September 1976. 859 F.2d at 1099, 1105. *See also Center Cadillac, Inc. v. Bank Leumi Trust Co. of New York*, 808 F.Supp. 213 (S.D.N.Y.1992) ("because a civil RICO action to recover damages for an injury does not exist until that injury has been suffered, Plaintiffs have an action for each injury sustained after May 14, 1987, notwithstanding the fact that Plaintiffs already knew of Defendants' fraudulent activity and might have anticipated further harm. Plaintiffs sustained actionable injury every time they lost money as a result of Defendants' RICO scheme." *Id.* at 226). Accordingly, the Court finds that the plaintiff's RICO claims are not barred by the statute of limitations.[2]

#### 2. Common Law Claims:

Defendants also maintain that plaintiff's common law claims for fraud and breach of

1. In addition, the Court observes that defendant Marvin Zolt, in his "Supplemental Notice of Motion," filed on January 21, 1993, incorporated by reference the "grounds set forth by defendant David Steinberg in his notice of motion dated January 19, 1993." Marvin Zolt's "Supplemental Notice of Motion," Jan. 19, 1993 at 1–2. The Court rejects plaintiff's argument that Mr. Zolt's motion was submitted "belatedly." Plaintiff seems to have overlooked Fed.R.Civ.P. 6(a), which provides that when computing time periods of less than eleven days, intermediate Saturdays, Sundays, and legal holidays are excluded.

2. In his "Memorandum of Law of Defendants Marvin Zolt and Zolt and Loomis, P.C., in Support of Motion Pursuant to Rules 50, 59, and 62," filed Jan. 23, 1993, Mr. Zolt argues that the Court must dismiss the RICO claims on the grounds that the defendants' wrongful acts, the injury to the estate, and plaintiff's awareness of the wrongful acts all occurred more than four years prior to the commencement of the lawsuit (before December 10, 1982). We disagree. As mentioned above, the key dates are when each separate injury arose, not when the wrongful acts occurred or when the plaintiff became aware of the wrongful acts. The jury explicitly found that the plaintiff's injuries all arose within four years of the commencement of the lawsuit. We do not believe that these injuries were mere continuations of an injury that had occurred outside the four-year statute of limitations. Measuring the RICO claims by the dates when the injuries arose, the Court finds that the RICO claims are timely as to both defendants.

fiduciary duty are barred by the applicable statute of limitations.[3] We disagree. We have already held that New York law governs the resolution of this dispute, and that, accordingly, the six-year New York statute of limitations applies to plaintiff's fraud and breach of fiduciary claims. *See* Trial Tr. 8015–16, 8499–8500. We do not believe that either the fraud or breach of fiduciary duty claim is barred by its six-year statute of limitations.

■ Defendants also argue that plaintiff's "actual knowledge" of defendants' wrongful acts by December 10, 1982 negates plaintiff's RICO and fraud claims. We have already rejected this argument with respect to the RICO claims and do so here for the fraud claim as well. The Court recognizes that justifiable reliance is an essential element of a fraud claim (*See* Jury Charge, Instruction No. 64, at 71), and that there is an inconsistency between a finding that the plaintiff had actual knowledge of defendants' wrongdoing and that plaintiff justifiably relied on a false representation made by defendants. However, the Court also recognizes that the jury found that plaintiff had actual knowledge of defendants' wrongdoing by December 10, 1982, four years prior to the commencement of the suit, and there remains a two-year window in which defendants could have committed the fraud unbeknownst to the plaintiff.

■ Defendants argue that since the jury found that the plaintiff had actual knowledge of defendants' wrongdoing on the earliest date upon which they could have, it is very possible that the plaintiff acquired actual knowledge of defendants' wrongdoing well before December 10, 1982, and that therefore there was never a justifiable reliance by the plaintiff within the applicable six-year statute of limitations for fraud. We disagree.

Where there is an alleged inconsistency in the jury's verdict, " '[i]t is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them.' " *Auwood v. Harry Brandt Booking Office, Inc.*, 850 F.2d 884, 891 (2d Cir.1988), *citing*, C. Wright & A. Miller, Federal Practice and Procedure § 2510, at 515 (2d ed. 1971). The jury was properly instructed on the elements of the Estate's claims against defendants and all of their defenses to these claims. There is a strong presumption that the jury properly followed these instructions. *See United States v. Casamento*, 887 F.2d 1141, 1151 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990).

■ Accordingly, a court must uphold the verdict of a properly instructed jury if there is any "plausible" explanation for the purported inconsistency in their verdict. *See United States Football v. National Football League*, 644 F.Supp. 1040 (S.D.N.Y.1986) ("the Seventh Amendment imposes upon the courts a constitutional obligation to search for an interpretation of the case which reconciles the verdicts, . . . and which respects the principle that 'juries are not bound by what seems inescapable logic to judges' " *Id.* at 1046 (citations omitted)), *aff'd,* 842 F.2d 1335 (2d Cir.1988).

In this case, the jury could have easily found that the Estate "justifiably relied" on Mr. Steinberg's and Mr. Zolt's misrepresentations through 1981 and up to December 10, 1982. Mindful of the fact that the jury was properly instructed on the elements of the fraud claim, including its six-year statute of limitations, the Court will accept this highly plausible interpretation of the jury's verdict. Accordingly, we find that the plaintiff's fraud claim is not barred by the six-year statute of limitations.[4]

---

**3.** Defendants maintain that all of plaintiff's common law claims are barred by the statute of limitations. However, neither defendant specifically mentions the conversion, negligence, or gross negligence claims. In the absence of a reasoned argument with respect to these claims, and, indeed, in the absence of any argument at all, the Court will not address these issues.

**4.** Mr. Zolt also argues that the jury's finding of "actual knowledge" on the part of the Estate on December 10, 1993, negates the conversion and breach of fiduciary duty claims. *See* "Affidavit of Ray Beckerman," filed Nov. 17, 1992, at 3. Mr. Zolt provides no reasoning for this argument, however, and the Court finds that it is without merit. Actual knowledge on the part of plaintiff does not exonerate the defendants on either the conversion or breach of fiduciary claims.

**B. Waiver and Estoppel**

■ Defendants argue that plaintiff's claims are barred by the doctrines of waiver and estoppel. We disagree. Plaintiff's claims are not barred by waiver or estoppel, because defendants have failed to plead, prove, or submit to the jury the elements of either of these affirmative defenses. *See Steinberg v. Columbia Pictures Industries, Inc.,* 663 F.Supp. 706, 715 (S.D.N.Y.1987); *Galvez v. Local 804 Welfare Trust Fund,* 543 F.Supp. 316, 317 (E.D.N.Y.1982). Both waiver and estoppel require a showing not only of knowledge on the part of the plaintiff, but also an intent element which is separate and distinct from a finding of actual knowledge. *See Christian Dior–New York, Inc. v. Koret, Inc.,* 792 F.2d 34, 40 (2d Cir.1986); *Voest–Alpine International Corp. v. Chase Manhattan Bank, N.A.,* 707 F.2d 680, 685 (2d Cir.1983); *Rosenthal v. National Life Insurance Co.,* 486 F.Supp. 1018, 1023 (S.D.N.Y. 1980). Thus, the jury's finding that the Estate had actual knowledge as of December 10, 1982, does not establish the intent element of either waiver or estoppel. Since there was no finding by the jury of the requisite intent to satisfy either waiver or estoppel, Mr. Steinberg and Mr. Zolt have failed to carry their burden of establishing the elements of either of these affirmative defenses.

**C. Ratification**

■ Defendants argue that plaintiff's claims are barred by the doctrine of ratification, because the Estate ratified defendants' unauthorized acts by not disaffirming the Coudert tax structure. We disagree. First of all, there is evidence that the Estate did not retain the Coudert tax structure. *See* "Plaintiff's Memorandum in Opposition to Defendants' Post–Trial Motions" ("Plaintiff's Memorandum"), Feb. 12, 1993, at 42–43 (and accompanying cites to Trial Transcript). More importantly, though, even had the Estate affirmed the tax structure by failing to repudiate it, such conduct would not constitute a ratification. Ratification does not occur where a principal must affirm a transaction to protect his own interests. *Delano v. Kitch,* 663 F.2d 990, 999 (10th Cir.1981), *cert.*

*denied,* 456 U.S. 946, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982). In this case, there is ample evidence that any action taken by the Estate with respect to the Netherlands and Netherlands Antilles after 1986 was necessary to protect its interests and avoid further loss. In any case, defendants have not contradicted plaintiff's argument that such an affirmation was necessary to protect the interests of the Estate. Accordingly, we do not believe that plaintiff's alleged failure to repudiate constitutes a ratification of Mr. Steinberg's and Mr. Zolt's unauthorized acts.

**D. Constitutionality of RICO**

■ Defendants maintain that they are entitled to judgment as a matter of law on plaintiff's RICO claims because the RICO Act, 18 U.S.C. § 1961 *et seq.,* is unconstitutionally vague. In particular, defendants claim, the phrase "pattern of racketeering activity" has not been, nor can it be, defined with sufficient clarity to give a person of ordinary intelligence fair notice as to whether his or her conduct may give rise to RICO liability.

The Court disagrees, and relies on the clearly established law in this Circuit establishing the constitutionality of the RICO Act. In particular, the Court relies on *United States v. Coiro,* 922 F.2d 1008 (2d Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991), in which the Court affirmed the conviction of an organized crime figure, holding that RICO's pattern requirement was not unconstitutionally vague as applied. 922 F.2d at 1017. In light of the facts of this particular case, the Court finds that the RICO statute provided the defendants with sufficient and fair notice that their illegal conduct was proscribed by RICO's provisions. Accordingly, we find that the RICO statute and its pattern requirement are not unconstitutionally vague as applied to defendants Mr. Steinberg and Mr. Zolt in this case.

**E. Reliance on Inadmissible Evidence**

*1. Plaintiff J. Reid Bingham's Testimony:*

■ Defendants maintain that the plaintiff Mr. Bingham was erroneously permitted

to testify in plaintiff's case-in-chief and in rebuttal on the grounds that plaintiff lacked first-hand knowledge of the case and that plaintiff was biased because of a conflict of interest.

The Court observes that defendants have not pointed to a single instance in the record in which Mr. Bingham testified to something which was not within his personal knowledge. Indeed, as the plaintiff's memorandum makes clear, the main areas addressed in Mr. Bingham's direct testimony were clearly subjects in which he was personally involved (i.e., his personal dealings with Mr. Steinberg and Mr. Zolt, his personal involvement in the tracing of diverted Estate assets and the preparation of the Deloitte & Touche report, and his personal involvement in the sale of recovered Estate assets, the proceeds of which were used to reduce the Estate's damage claim against defendants). *See* Plaintiff's Memorandum, at 30–31.

In addition, defendants argue that Mr. Bingham should have been precluded from testifying based upon purported conflicts of interest. We disagree. The Court believes that any conflict of interest Mr. Bingham may have had would go to his credibility, but would not affect the admissibility of his testimony. Indeed, the nature and extent of Mr. Bingham's alleged conflicts of interest and bias were the subject of extensive and vigorous cross-examination. *See United States v. Hill,* 629 F.Supp. 493, 496 (D.Del.1986).[5] Accordingly, the Court finds that Mr. Bingham's testimony was admissible.

### 2. Testimony and Report of Deloitte & Touche:

■ Defendants claim that the Court improperly admitted the Deloitte & Touche report and improperly allowed Thomas Hafner

to testify about the report, because the testimony and the report did not meet the "threshold for relevancy, reliability, or authority." "Reply Memorandum of Law of David J. Steinberg in Support of His Motion for Judgment as a Matter of Law," Feb. 25, 1993, at 17. The Court disagrees. The Deloitte & Touche report was proffered by plaintiff as evidence of the amount of money which was not remitted to the Estate between the years 1981 and 1986. This evidence was directly relevant to the issue of damages, and Mr. Hafner's expert testimony assisted "the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702.[6] Accordingly, we find that the Court did not err in admitting the Deloitte & Touche report and in allowing Mr. Hafner to testify.

### 3. Testimony Regarding Mr. Steinberg's Retention of Interest in Diverted Funds:

■ Defendants maintain that the Court erred in admitting plaintiff's and Mr. Hafner's testimony that Mr. Steinberg retained an interest in diverted funds, because such evidence was irrelevant, or at most, only marginally relevant, and its probative value was substantially outweighed by the risk of prejudice. The Court disagrees. The testimony regarding Mr. Steinberg's retention of interest in diverted funds was relevant on the issue of intent, since it demonstrates that Mr. Steinberg was using, without authorization, funds diverted from the Estate for his personal use. Indeed, this evidence goes to the heart of Mr. Steinberg's defense that he acted at all times in good faith with respect to Estate matters. Under the circumstances, the Court finds that the probative value of the evidence significantly outweighs

---

**5.** The Court notes that Steinberg's citation to the ABA Code of Professional Responsibility, DR 5–102, which precludes an attorney from testifying as a witness in an action he is litigating, is inapposite, because Hughes Hubbard & Reed, and not Mr. Bingham or Kirkpatrick & Lockhart, represents the Estate in this action. *Cf. International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir.1975) (disciplinary rule does not preclude law firm from appearing as trial counsel where former partner may be witness; "[w]e need not be concerned that ... [the former partner] will

unfairly vouch for his own credibility, for he will not be the advocate at trial. He will say no more than the trial judge permits him to say upon his oath." *Id.* at 1294–95).

**6.** In addition, the Court finds no reason to question the reliability of the report or of Mr. Hafner's testimony. We observe that as senior manager at the accounting firm of Deloitte & Touche, Mr. Hafner had the qualifications that make for a reliable and authoritative expert witness.

the danger of unfair prejudice, confusion on the issues, or misleading the jury. Fed. R.Evid. 403.

### 4. Wayne Coleman's Testimony Regarding Valuation:

■ Defendants claim that Wayne Coleman should not have been permitted to testify as a rebuttal witness on the subject of valuation because his testimony constituted an unfair surprise to the defendants. The Court disagrees. In the Pretrial Order, the Estate specifically listed Mr. Coleman as a possible expert rebuttal witness, whose testimony would be used to rebut elements of the defendants' case-in-chief relating to the value of the Estate's music assets. *See* Pretrial Order, Exhibit J, at 2 & 7. In addition, the Court is satisfied that the plaintiff produced Mr. Coleman's valuation report to defendants as soon as was practically possible.[7] Accordingly, the Court finds that Mr. Coleman's testimony regarding valuation was properly admitted by the Court.

### F. Erroneous Jury Instructions

#### 1. Instructions Precluding Consideration of Rita Marley's Intestate Share:

■ Defendants maintain that the Court erred in instructing the jury that they could not consider Rita Marley's intestate share of Bob Marley's Estate in determining whether the Estate suffered any actual loss. The Court disagrees. The jury should not be permitted to consider Rita Marley's entitlement in assessing damages since defendants have failed to proffer sufficient evidence to "provide the jury with a sound basis for approximating with reasonable certainty" the amount of Rita Marley's entitlement. *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 852 (2nd Cir.1987). Thus, any determination by the jury as to such amount would be speculative and, as such, cannot constitute a proper basis for an offset. *See Wolff & Munier, Inc. v. Whiting–Turner Contracting Co.*, 946 F.2d 1003, 1012 (2nd Cir.1991). Accordingly, we find that the Court did not err in precluding consideration of Rita Marley's intestate share. *See* Trial Tr. 8561–65.

#### 2. Instruction Precluding Consideration of Beneficiaries' Positions:

■ Defendants claim that the Court erred in instructing the jury that only actual loss to the Estate was at issue, and that the individual beneficiaries' positions were irrelevant. We disagree. An estate is an entity apart and distinct from its beneficiaries. The respective positions of the estate's beneficiaries does not affect the measurement of damages incurred by the Estate. Accordingly, we affirm our trial ruling that the proper measure of plaintiff's damages was the loss to the Estate and not the loss to the individual beneficiaries. *See* Trial Tr. 8561.

#### 3. Instruction Precluding Consideration of Rise in Value of "Diverted Corporations":

■ Defendants claim that the Court erred in instructing the jury not to consider the increase in value of the "diverted corporations" unless defendants were only found liable for negligence. We disagree. First of all, defendants are not entitled to an offset for enhancement because defendants were found liable as intentional tort feasors and faithless fiduciaries. Defendants should not be able to reap the benefit of any enhancement in the value of the assets during the period of wrongdoing. *See Randall v. Loftsgaarden*, 478 U.S. 647, 662–63, 106 S.Ct. 3143, 3152–53, 92 L.Ed.2d 525 (1986); *Estate of Rothko*, 84 Misc.2d 830, 379 N.Y.S.2d 923, 965 (1975), *aff'd*, 43 N.Y.2d 305, 401 N.Y.S.2d 449, 372 N.E.2d 291 (1977). *See also Janigan v. Taylor*, 344 F.2d 781 (1st Cir.), *cert. denied*, 382 U.S. 879, 86 S.Ct. 163, 15 L.Ed.2d 120 (1965) ("It is more appropriate to give the defrauded party the benefit even of windfalls than to let the fraudulent party keep them." *Id.* at 786).

■ Secondly, defendants are entitled to a "credit" for any enhancement of the value of the recovered music assets *only* if the jury determines that the enhancement was a result of defendant's efforts and expenditures. *See American East India Corp. v.*

7. According to the plaintiff, the report was completed only eight hours before copies were given to defendants. *See* Plaintiff's Memorandum, at 37.

*Ideal Shoe Co.,* 400 F.Supp. 141, 168 (E.D.Pa. 1975), *aff'd,* 568 F.2d 768 (3d Cir.1978); *Segar v. State,* 111 Misc.2d 1034, 445 N.Y.S.2d 894, 897 (1981). Because defendants have failed to proffer sufficient evidence on what portion of the increase in the value of the music assets was attributable to the efforts and expenditures of the defendants, we believe the jury was correctly instructed not to consider the increase in value of the diverted corporations.

*4. Instruction Allowing Estate to Claim Royalties Owing to "Diverted Corporations" as Damages:*

█ Defendants maintain that the Court erred in permitting the Estate to claim as damages royalties that were owed to the diverted corporations. We disagree. In this argument, defendants urge a formalistic distinction between the Estate, as the owner of the corporations, and the corporations themselves, arguing that only the latter may sue for the diversion of royalty income. In cases where an estate owns the corporation, however, courts, including the Second Circuit Court of Appeals, have disregarded the separate status of the corporation from its owner for the benefit of the estate. *See Musico v. Champion Credit Corp.,* 764 F.2d 102, 108–110 (2d Cir.1985). We believe that in this case disregarding the distinction between the corporations and their owner, the Estate, is necessary to prevent fraud and achieve equity. *Id.* at 108. Accordingly, we find that the Court did not err in permitting the Estate to claim as damages royalties that were owed to the diverted corporations.

G. No Evidence of Actual Loss

Defendants claim that they are entitled to judgment as a matter of law because damages are an essential aspect of all plaintiff's purported causes of action and because plaintiff failed to present any evidence that the Estate suffered an actual loss in the case. We disagree. The Court believes that the plaintiff presented substantial evidence of actual loss, in particular with respect to the assets that were diverted from the Estate by the defendants.

H. The Award of Punitive Damages to Plaintiff Is Erroneous

Defendant Mr. Steinberg argues that the award of $1,000,000 in punitive damages is erroneous to the extent it is based on RICO claims since RICO's treble damages provision is itself punitive in nature. Although it appears to be an open question in the Second Circuit as to whether RICO's treble damages provision is in fact punitive in nature, this Court has held that RICO's treble damages provision precludes recovery of punitive damages. *See Galerie Furstenberg v. Coffaro,* 697 F.Supp. 1282 (S.D.N.Y.1988) ("Since ... [plaintiff] sues here under the federal RICO laws, whose plain language do not allow for punitive damages, and has not shown that Congress intended such damages to be available under RICO, [the claim for punitive damages is dismissed]" *Id.* at 1289).

█ In this case, plaintiff received $800,000 on its RICO claims, which was trebled by the Court to $2,400,000. Given this substantial increase, we do not believe that a punitive damage award would be appropriate if it is based on the RICO violations. It is generally sound practice not to ask a jury to consider awarding separate punitive damage awards in cases involving multiple claims, since such a practice can artificially inflate the aggregate amount awarded. *See King v. Macri,* 993 F.2d 294, 298–99 (2d Cir.1993). Accordingly, it is impossible to discern on which claims the jury based its award of punitive damages. *See* Special Verdict Sheet, questions 61–62. Under the circumstances, the Court believes that a reduction in the punitive damages award is in the interests of reasonableness and fairness to the litigants. Specifically, we find that an award of $250,000 is sufficient to deter similar conduct by the defendant in the future and to serve as a warning to others not to engage in such wrongful non–RICO acts. In addition, we find that such a figure bears a reasonable relationship to the harm done and the flagrancy of the conduct causing it. Accordingly, we order that the judgment be revised to reflect a punitive damage award of $250,000 against defendant Mr. Steinberg, as opposed to the previous figure of $1,000,000. *See Aldrich v. Thomson McKinnon Securi-*

*ties, Inc.*, 756 F.2d 243 (2d Cir.1985) ("It is the duty of a court . . . 'to keep a verdict for punitive damages within reasonable bounds' . . ." *Id.* at 248–49 (citations omitted)).[8]

## I. The Jury's Verdict Was Tainted by Unfair Prejudice

██ Defendant Mr. Steinberg maintains that he was unfairly prejudiced by the Court's requiring him to invoke the Fifth Amendment in the jury's presence. We disagree. The Supreme Court has stated that the Fifth Amendment does protect a witness against the "imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967) (citations omitted). However, we do not believe that Mr. Steinberg's invocation of the Fifth Amendment was "costly" in a constitutional sense. We have reached this conclusion in light of the facts that the jury was properly instructed on the issue of Mr. Steinberg's invocation of the Fifth Amendment (*See* Jury Charge, Instruction No. 25, at 17), and that the plaintiff presented substantial evidence against Mr. Steinberg apart from any proper adverse inferences consequent to his invocation of the Fifth Amendment. *See Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976).

In addition, the Court finds that Mr. Steinberg's testimony was admissible under Rule 403 of the Federal Rules of Evidence in that its probative value substantially outweighed the risk of unfair prejudice. The Court believes that Mr. Steinberg's invocation of the Fifth Amendment was highly probative on the issue of liability (*See Brink's, Inc. v. City of New York*, 539 F.Supp. 1139 (S.D.N.Y. 1982) (invocation of Fifth Amendment has "significant probative value" on issue of liability), *aff'd*, 717 F.2d 700 (2d Cir.1983)), and that any prejudice Mr. Steinberg suffered as a result of the invocation was not "unfair" (*See Id.* at 710).

## J. Motion for an Order Staying the Proceedings

As the Court has hereby disposed of all the issues raised in the defendants' motions, defendants' motion to stay proceedings pending the disposition of the motion for judgment as a matter of law is moot.

## K. Plaintiff's Motion to Register Judgment Outside of New York

██ Plaintiff has requested that this Court order that the Judgment in this case be registered in the district of Pennsylvania, on the ground that "[since] Steinberg is a Pennsylvania resident, presumably most if not all of his assets lie outside of this district." Plaintiff's Memorandum, at 54. Plaintiff correctly observes that registration of a judgment in another district may be allowed for "good cause" (28 U.S.C. § 1963 (West Supp.1992)), and that good cause may be shown where the defendant has substantial property in another district and insufficient property in the rendering district to satisfy the judgment. However, the plaintiff has not provided a case, nor have we found one, that stands for the proposition that an automatic presumption of "good cause" is established by the fact that a defendant has a different residence than that of the rendering district. Accordingly, at this time, we deny plaintiff's request for an order to register this Judgment in Pennsylvania, but will allow plaintiff to refile this motion upon a more convincing showing of good cause.

## L. Plaintiff's Application for Attorney's Fees and Disbursements

██ In the Judgment entered by this Court on January 4, 1993, the Estate was awarded reasonable attorneys' fees against

---

**8.** Defendant Steinberg argues that the award of punitive damages violates the Eighth and Fourteenth Amendments to the United States Constitution. The defendant fails to cite any cases for this novel proposition, and the Court finds that it is without merit.

The defendant also argues that punitive damages are not available in this case because "the only alleged 'damages' plaintiff sustained occurred after plaintiff had actual knowledge of the allegedly wrongful acts, and plaintiff failed to

conduct a reasonably diligent inquiry." "Motion of Defendant David J. Steinberg for Judgment as a Matter of Law," Jan. 19, 1993, at 15. Again, the defendant fails to provide a case for his proposition, and the Court finds that the fact that the Estate had actual knowledge and did not conduct a reasonably diligent inquiry does not prevent the imposition of a punitive damages award, which, in this case, was imposed by a jury properly instructed as to the standard for awarding punitive damages.

defendants Mr. Zolt and Mr. Steinberg pursuant to 18 U.S.C. § 1964(c). In accordance with the Judgment, the plaintiff has submitted an accounting with respect to attorneys' fees and disbursements, requesting $3,300,000 in legal fees and $264,033.48 in disbursements, for a total of $3,564,033.48. See "Plaintiff's Revised Accounting with Respect to Attorneys' Fees and Expenses, Submitted Pursuant to the Judgment Entered Herein, and Revised Affidavit in Support Thereof" ("Plaintiff's Accounting"), Feb. 5, 1993.

The Court has carefully reviewed the Plaintiff's Accounting and the defendants' opposition affidavits. See Jeremy Mishkin's "Affidavit in Opposition to Plaintiff's Revised Accounting with Respect to Attorneys' Fees and Expenses" ("Affidavit in Opposition"), Feb. 18, 1993; Ray Beckerman's "Affidavit Concerning Plaintiff's 'Accounting' of Attorneys' Fees," Feb. 3, 1993. We are somewhat troubled by the high level of expenses incurred by the plaintiff, in particular with respect to certain aspects of the Plaintiff's Accounting. The Court does not challenge the veracity of the figures, but does question the reasonableness of certain expenses (e.g., billing $24,108.75 in legal fees in a single day (See Plaintiff's Accounting, at 491, entries for October 29, 1992); 23 hours charged by a single attorney on a single day (See Plaintiff's Accounting, at 463, entry for S.D. Rothman on September 24, 1992)).

 Under the circumstances, the Court will reduce the plaintiff's requested total by fifteen percent. Accordingly, the Court awards the plaintiff attorneys' fees and disbursements in the sum of $3,029,428.46.[9]

SO ORDERED.

---

**9.** In Mr. Mishkin's Affidavit in Opposition, he argues that the fees which were incurred subsequent to the commencement of the contingent fee arrangement between the Estate and its attorneys are not actual expenses of the Estate for purposes of computing the award of attorneys' fees against Mr. Steinberg and Mr. Zolt. We disagree. The establishment of a contingent fee does not alter the computation of attorneys' fees in a manner that would eliminate the expenses for hourly billing. See City of Burlington v. Dague, — U.S. ——, 112 S.Ct. 2638, 2639–41, 120 L.Ed.2d 449 (1992); Williamsburg Fair Housing Committee v. Ross–Rodney Housing Corp., 599 F.Supp. 509, 519 (S.D.N.Y.1984).

In addition, the Court declines to reduce the award of attorneys' fees to reflect the fact that $250,000 of the damages was for non-RICO claims. While the non-RICO claims by themselves do not merit an award of attorneys' fees, the Court believes that all of the plaintiff's claims involved a common nucleus of facts and were based on related legal theories. Under the circumstances, we believe that any reduction in the award of attorneys' fees due to the non-RICO claims would be inappropriate. See Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983).

The Court rejects defendants' request for a jury trial, discovery, and an evidentiary hearing on the issue of attorneys' fees. Courts have the responsibility of calculating an award of attorneys' fees which is made pursuant to a statute. See Gagne v. Town of Enfield, 734 F.2d 902, 904 (2d Cir.1984); United States Football League v. National Football League, 704 F.Supp. 474, 476 (S.D.N.Y.), aff'd, 887 F.2d 408 (2d Cir.1989), cert. denied, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990). In this case, the Estate has been awarded attorneys' fees pursuant to 18 U.S.C. § 1964(c). Accordingly, the Court, and not a jury, determines the amount of the award.

In making this determination, the Court is satisfied that the plaintiff's documentation and detailed description with respect to legal fees and costs, as set forth in Plaintiff's Accounting, provide the Court with an adequate record upon which to base the award. Accordingly, the Court will not allow the defendants to engage in any discovery or to conduct an evidentiary hearing on the issue of attorneys' fees. The defendants have failed to demonstrate why this already protracted litigation should be further extended to permit additional inquiries concerning attorneys' fees.