[878 NYS2d 97]

HAMLET AT WILLOW CREEK DEVELOPMENT CO., LLC, et al., Respondents-Appellants, v NORTHEAST LAND DEVELOPMENT CORPORATION et al., Respondents, and PAV-CO ASPHALT, INC., et al., Appellants-Respondents, et al., Defendant. (Appeals No. 1 and 2.)

HAMLET AT WILLOW CREEK DEVELOPMENT CO., LLC, et al., Appellants-Respondents, v NORTHEAST LAND DEVELOPMENT CORPORATION et al., Appellants-Respondents, and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Respondent-Appellant, et al., Defendant. (Appeal No. 3.)

Second Department, April 21, 2009

88

### APPEARANCES OF COUNSEL

*Pinks, Arbeit & Nemeth*, Hauppauge (*Steven G. Pinks* and *Jonathan W. Lipshie* of counsel), for Pav-Co Asphalt, Inc., and another, appellants-respondents in appeals No. 1 and 2 and defendants-appellants-respondents in appeal No. 3.

*Rosenberg Calica & Birney, LLP*, Garden City (*Robert M. Calica* and *Robert J. Howard* of counsel), for Hamlet at Willow Creek Development Co., LLC, and others, respondents-appellants in appeals No. 1 and 2 and plaintiffs-appellants-respondents in appeal No. 3.

*Glynn Mercep and Purcell, LLP*, Stony Brook (*Bradley C. Abbott* and *Timothy Glynn* of counsel), for Northeast Land Development Corporation and another, respondents in appeals No. 1 and 2 and defendants-appellants-respondents in appeal No. 3.

*Torre, Lentz, Gamell, Gary & Rittmaster, LLP*, Jericho (*Mark S. Gamell, Kevin M. Gary* and *Lawrence S. Novak* of counsel), for Fidelity and Deposit Company of Maryland, respondent-appellant in appeal No. 3.

### OPINION OF THE COURT

Spolzino, J.P.

These appeals and cross appeals arise from the excavation work undertaken in anticipation of the construction of a residential subdivision and golf course in the Town of Brookhaven. The appeals and cross appeals present two principal questions. First, are the defendants responsible for the reimbursement of the owner, the plaintiff Hamlet at Willow Creek Development Co., LLC (hereinafter the Hamlet), for certain fees and costs it paid to the Town, and additional fees and costs it may be required to pay to the Town, in connection with the excavation? Second, can the defendants be held liable to the Hamlet in tort for material removed from the site in excess of that provided for in the plans and specifications? We conclude that the Hamlet is

entitled to recover the excavation fees as the equitable subrogee of the Town under certain bonds posted with respect to the excavation and that the defendants may be liable in conversion for the excess material that was removed. A trial is required, however, to determine the amount of excess material that was removed, if any.

I

On July 1, 2002, the Hamlet entered into an excavation agreement with the defendant Northeast Land Development Corporation (hereinafter Northeast), pursuant to which Northeast undertook to perform excavation work with respect to the Hamlet's 186-acre development project. The excavation agreement apparently was entered into in anticipation of the conditional approval of the subdivision that ultimately was granted by the Planning Board of the Town of Brookhaven (hereinafter the Planning Board) on July 8, 2002. Among the conditions imposed in connection with that approval was the requirement that the Hamlet implement certain mitigation measures identified in a findings statement that had been adopted by the Planning Board on October 1, 2001, in satisfaction of the requirements of the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]). One of those measures was the payment of fees required by chapter 53 of the Brookhaven Town Code.

The excavation agreement specified that Northeast would be required to remove from the site and haul away approximately 1.65 million cubic yards of material in accordance with the SEQRA findings statement and the final engineering plan. It also specifically obligated Northeast to pay "any municipal fee . . . pursuant to the Town of Brookhaven requirements," making specific reference to "the Town of Brookhaven Joseph Macchia Environmental Preservation Capital Reserve Fund." The agreement also provided that Northeast "shall not over excavate any area." With respect to Northeast's compensation for its services, the excavation agreement provided that the Hamlet would have "no financial obligation to [Northeast] other than [Northeast] shall own any and all excess material taken from the site in conformance with the approved plan." The excavation agreement further provided, however, that Northeast would be paid $1.5 million to excavate the drainage and sewers for the development. The excavation agreement was signed by Northeast's principal, the defendant Carl Zorn.

The municipal fees to which the excavation agreement referred (hereinafter the Environmental Fund fees) are imposed by the Town of Brookhaven Joseph Macchia Environmental Preservation Capital Reserve Fund Law (Brookhaven Town Code ch 15; § 53-3 [H]). The law in effect at the time required the applicant for an approved grading plan incident to residential development to pay Environmental Fund fees in the sum of 25¢ per cubic yard of material removed from a site for drainage and other town-required improvements and $1 per cubic yard of material removed for all other improvements (see Brookhaven Town Code § 53-3 [H] [1]; § 29-7 [C] [1] [a] [former (1), (2)]). The law further provides that the Environmental Fund fees are due "upon final conditional approval" of the subdivision section or site plan and reserves to the Commissioner of the Department of Planning, Environment and Development the "final determination of the amount of material subject to the fees" (see Brookhaven Town Code § 53-3 [H] [3]; § 29-7 [C] [1] [c]). Prior to commencement of the excavation, the applicant "must post a bond in such form as shall be approved by the Town Attorney and in an amount to be specified by the Planning Board to guarantee performance in accordance with the approved site plan or the approved subdivision plan" (Brookhaven Town Code § 53-5).

To satisfy its obligations under the excavation agreement, Northeast entered into an oral agreement with the defendant Pav-Co Asphalt, Inc. (hereinafter Pav-Co). According to Pav-Co's principal, the defendant William Fehr, Northeast agreed to sell Pav-Co approximately 471,425 cubic yards of excess fill at $3.50 per cubic yard, or approximately $1.65 million, which Northeast would dedicate to the payment of the Environmental Fund fees due to the Town. According to Zorn, however, Pav-Co was to make the payments for the fill directly to the Town.

On December 19, 2002, the defendant Fidelity and Deposit Company of Maryland (hereinafter Fidelity) issued a "payment bond" (hereinafter the first payment bond) to the Town in the amount of $500,000. Executed by Fehr on behalf of Pav-Co, the first payment bond recited that Pav-Co, as "Principal," was obligated to provide a bond guaranteeing the payment of fees to the Town for the removal of material from the Hamlet site, and bound Fidelity, as "Surety," to pay those fees in the event that Pav-Co failed to do so. The first payment bond was amended on the day of its issuance to add Northeast as a principal. According to Fehr, however, the Town rejected the first payment bond because the amount was insufficient.

Also on December 19, 2002, another "payment bond" in the amount of $1.5 million (hereinafter the second payment bond) was executed by nonparty All County Paving Corp. (hereinafter All County), as "Principal," and Fehr and nonparty Ronald Fehr as "Sureties." The second payment bond recited that All County "has applied to mine property located at the Hamlet at Willow Creek" and provided that the principal and sureties "hereby undertake and become bound in the sum of $1,500,000 to the Town of Brookhaven for the payment of any sum due the Town of Brookhaven by All County Paving Corp. for the mining of property at the Hamlet at Willow Creek, Mount Sinai, New York, incidental to the development of said site as required by Section 53-3 (H) (1) (b) [sic] of the Code of the Town of Brookhaven." According to Fehr, the Town rejected the second payment bond because it was not issued by a bonding company.

The Hamlet disputes Fehr's contention that the Town rejected the first and second payment bonds, citing the deposition testimony of Gregg Kelsey, the Assistant Town Engineer, that he had seen a copy of the second payment bond in the Town's file and had not come across any town document in which any payment bond had been cancelled or returned to the maker. Mr. Kelsey, however, testified that he did not see any resolution accepting the second payment bond which, in his experience, was typically done.

On March 17, 2003, Northeast and Pav-Co, as "Principals," and Fidelity, as "Surety," executed a "Performance (Completion) Bond" (hereinafter the performance bond). According to its terms, Fidelity was obligated to the Town, up to the sum of $1.665 million, to satisfy the obligation of Northeast and Pav-Co to remove approximately 1.6 million cubic yards of fill at the Hamlet site "in accordance with the construction specification of the Town of Brookhaven all in conformance with the plot and drainage plan approved by the Town of Brookhaven Planning Board and to the satisfaction of the Town of Brookhaven."

According to Fehr, the performance bond replaced the first and second payment bonds, was intended to comply with the bonding requirement of Brookhaven Town Code § 53-5, and was accepted by the Town. The Town Attorney required, however, that the performance bond be relabeled a "restoration bond," and that the language of the bond be modified to provide for Fidelity's guaranty of the principals' obligation to remove the fill

"in accordance with the construction specifications of the Town of Brookhaven and the Town of Brookhaven Planning Board, as approved, pursuant to the Town of Brookhaven Planning Board's Subdivision Grant dated August 5, 2002, and Town of Brookhaven Planning Board's Site Plan Grant dated July 8, 2002, and furthermore, in conformance with the Plot and Drainage Plan approved by the Town of Brookhaven Planning Board and to the full satisfaction of the Town of Brookhaven."

Fidelity made the requested change in a rider dated April 22, 2003, which was executed by Zorn and Fehr, on behalf of Northeast and Pav-Co, respectively; the Town Board of the Town of Brookhaven accepted the performance bond on May 22, 2003.

According to Fehr, Pav-Co paid the sum of $500,000 to the Town and the sum of $485,000 directly to Northeast pursuant to its oral agreement with Northeast. Pav-Co's payments to the Town were made on its behalf by All County in the sum of $300,000 on March 26, 2003, by Prima Asphalt Concrete, Inc., in the sum of $100,000 on October 3, 2003, and on its own behalf by cashier's check in the sum of $100,000 on December 10, 2003. Pav-Co's payments to Northeast consisted of one check from All County in the sum of $100,000 on June 12, 2003, and three checks from Prima Asphalt Concrete, Inc., on March 26, 2003, February 28, 2004, and August 9, 2004, respectively, in the total sum of $385,000.

By letter dated August 6, 2004, the Town advised the Hamlet of its "concerns" with respect to a number of issues related to the project, including the over-excavation of the property and the failure to pay "all outstanding fees related to the excess materials application." When the Town apparently began to withhold certificates of occupancy for completed residences in the development, and discussions with the Town did not result in a resolution of the matter, the Hamlet commenced a proceeding in the Supreme Court, Suffolk County seeking a judgment compelling the Town to issue certificates of occupancy and awarding damages to the Hamlet for the losses allegedly caused by the delay. The litigation abated as a result of an interim stipulation and an amended stipulation, but the issues that the Town had raised were not completely resolved.

More than eight months later, on April 20, 2005, the Town issued a stop-work order with respect to the project, citing over-excavation of the property. In order to resume work, the Hamlet

paid the sum of $740,000 in Environmental Fund fees to the Town on April 29, 2005, and agreed, in a stipulation dated May 6, 2005, to deposit with the Town the additional sum of $250,000 with respect to the Town's claim for additional fees as a result of the claimed over-excavation. The Hamlet also paid the sum of $50,000 to the Town for the engineering costs the Town had incurred in determining the amount of the over-excavation.

In its proceeding against the Town, the Hamlet admitted, based upon an engineering study dated July 1, 2004, that there had been an over-excavation, but quantified the over-excavation as approximately 82,000 cubic yards of material, less than five percent over the original estimate of 1,659,968 cubic yards. On April 8, 2005, after completing a volumetric calculation, the Hamlet's engineers certified to the Town that the total amount of excavation at the site was substantially greater, and was actually 1,896,406 cubic yards, an amount which exceeded the preconstruction estimate by 236,438 cubic yards, or more than 14%. Pav-Co denied knowledge or information sufficient to form a belief as to the truth of these assertions. Kelsey, the Assistant Town Engineer, testified at his deposition that a final determination as to the amount of the over-excavation, if any, was awaiting review by the Town's outside engineer of the calculations submitted by the Hamlet's engineers.

## II

The Hamlet commenced this action against Northeast, Pav-Co, Zorn, Fehr, and Fidelity to recover damages for breach of contract, conversion, unjust enrichment, and fraud, and as equitable subrogee to the rights of the Town under the payment and performance bonds.

The first two appeals that are before us arise from the motions of Pav-Co, Fehr, and Fidelity to dismiss the complaint insofar as asserted against them, and the Hamlet's cross motion for, among other things, summary judgment against all five defendants on so much of the first and fifth causes of action as were to recover the Environmental Fund fees and engineering costs it paid to the Town. In an order dated January 27, 2006, the Supreme Court granted those branches of the motions of Pav-Co, Fehr, and Fidelity which were to dismiss the fourth cause of action alleging fraud, but denied those branches of their motion which were to dismiss the other causes of action, and awarded summary judgment in favor of the Hamlet against all five defendants on its claims to recover the Environmental Fund fees only.

All of the defendants, except Fidelity, moved for, among other things, leave to renew and reargue the motions to dismiss the complaint and their opposition to the Hamlet's cross motion, which had been determined in the order dated January 27, 2006. In addition, Northeast and Zorn cross-moved pursuant to CPLR 3211 (a) (7) to dismiss the Hamlet's second cause of action sounding in conversion insofar as asserted against them. The Hamlet opposed the motions for leave to renew and the cross motion to dismiss the complaint, and separately cross-moved, among other things, to convert Pav-Co and Fehr's prior motion to dismiss the complaint insofar as asserted against them into a motion for summary judgment dismissing the complaint insofar as asserted against them and to convert Northeast and Zorn's cross motion to dismiss the second cause of action alleging conversion insofar as asserted against them into one for summary judgment dismissing the second cause of action insofar as asserted against them. The Hamlet requested that the court, upon conversion, deny that motion and cross motion for summary judgment, and grant that branch of its own separate cross motion which was for summary judgment on the causes of action to recover the Environmental Fund fees and engineering costs insofar as asserted against all defendants except Zorn. In an order dated May 5, 2006, the Supreme Court, among other things, granted those branches of the Hamlet's separate cross motion which were to convert Pav-Co and Fehr's motion to dismiss the complaint insofar as asserted against them, and Northeast and Zorn's cross motion to dismiss the second cause of action alleging conversion insofar as asserted against them, into a motion and cross motion for summary judgment, respectively, granted the converted motion of Northeast and Zorn for summary judgment dismissing the second cause of action alleging conversion insofar as asserted against them, granted leave to reargue the previous motions under a summary judgment standard and, upon reargument, denied the converted motion of Pav-Co and Fehr for summary judgment dismissing the complaint insofar as asserted against them, except as to the fourth cause of action alleging fraud, and awarded summary judgment in favor of the Hamlet on so much of the first and fifth causes of action in the amount it had paid the Town for Environmental Fund fees, adding to that amount the Hamlet's claim for engineering costs. Judgment was entered on May 30, 2006, adjudging all defendants except Zorn jointly and severally liable for those fees and costs and dismissing all claims against Zorn individually.

Pav-Co and Fehr appeal, and the Hamlet cross-appeals, from both the order dated May 5, 2006, made upon reargument and renewal, and the judgment entered May 30, 2006. The appeal and cross appeal from the order must be dismissed, however, because the right of direct appeal from that order terminated with the entry of the judgment in the action (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). The issues raised on the appeal and cross appeal from the intermediate order dated May 5, 2006 are brought up for review and have been considered on the appeal and the cross appeal from the judgment (*see* CPLR 5501 [a] [1]). The Hamlet does not cross-appeal, however, from so much of the order dated May 5, 2006, made upon reargument and renewal, as granted those branches of the respective converted motion and cross motion of the several defendants which were for summary judgment dismissing the fourth cause of action alleging fraud.

With respect to the issues raised by the third appeal, Fidelity moved for leave to renew its converted motion for summary judgment dismissing the complaint insofar as asserted against it, based upon newly-discovered evidence, to vacate so much of the orders dated January 27, 2006 and May 5, 2006, and the judgment entered May 30, 2006, as was adverse to it and, upon renewal, for summary judgment dismissing the complaint insofar as asserted against it. The remaining defendants also separately moved for leave to renew and to vacate the two orders and the judgment on the ground of newly-discovered evidence. In an order dated March 23, 2007, the Supreme Court granted those branches of Fidelity's motion which were for leave to renew, to vacate so much of the judgment as was against it, and for summary judgment dismissing the complaint insofar as asserted against it, but denied the respective separate motions of the remaining defendants for similar relief, holding them liable for the Environmental Fund fees and engineering costs pursuant to the first cause of action.

The Hamlet thereafter moved, among other things, for leave to reargue its opposition to Fidelity's motion to vacate the judgment and for renewal. Pav-Co and Fehr, as well as Northeast, again separately moved, on the basis of newly-discovered evidence, for leave to renew their respective motions to vacate so much of the judgment as was against each of them. In an order dated May 10, 2007, made upon reargument and renewal, the Supreme Court adhered to its prior determination in the order dated March 23, 2007, that Northeast, Pav-Co, and Fehr were

liable to the Hamlet, in effect, under the fifth cause of action for equitable subrogation. The court, however, vacated the judgment with respect to Fidelity and vacated so much of the order dated March 23, 2007 as, upon renewal, granted that branch of Fidelity's motion which was for summary judgment dismissing the complaint insofar as asserted against it, finding that triable issues of fact precluded the award of summary judgment to either party on the Hamlet's claims against Fidelity. All of the defendants separately appeal, and the Hamlet cross-appeals, from stated portions of the order dated May 10, 2007.

Presently before us for consideration is whether, and to what extent, the liability of each of the five defendants has been established under the Hamlet's causes of action alleging breach of contract, equitable subrogation, conversion, and unjust enrichment, and whether triable issues of fact remain with respect to each of those causes of action.

### III

Pav-Co and Fehr argue initially that since they had not yet had the opportunity to answer and conduct discovery, the Supreme Court should not have addressed the merits of this dispute in the course of resolving the parties' various motions and cross motions. The short answer to this contention is that by arguing the merits of their respective positions on the basis of factual affidavits and extensive documentary evidence, the parties charted a summary judgment course and cannot be heard to complain that the Supreme Court addressed their motions under the summary judgment standard (*see Tendler v Bais Knesses of New Hempstead, Inc.*, 52 AD3d 500, 502 [2008]; *Doukas v Doukas*, 47 AD3d 753 [2008]; *Harris v Hallberg*, 36 AD3d 857, 858 [2007]). Moreover, the record reflects that all of the parties had ample opportunity in the course of the extensive motion practice before the Supreme Court to submit whatever evidentiary material they deemed appropriate to support their substantive assertions with respect to the issue of liability. As to their claimed need for discovery, these defendants failed to satisfy their burden of offering "an evidentiary basis to suggest that discovery may lead to relevant evidence" or that "facts essential to justify opposition to the motion were exclusively within the knowledge and control of the plaintiff" (*Lopez v WS Distrib., Inc.*, 34 AD3d 759, 760 [2006]; *see Torres v American Bldg. Maintenance Co. of NY*, 51 AD3d 905, 906 [2008]; *Alizio v Perpignano*, 39 AD3d 781, 784 [2007]). As we note below,

however, upon remittal, the Supreme Court may, in its discretion, deem additional discovery necessary with respect to the issue of damages.

■ Northeast and Zorn argue that our dismissal of the Hamlet's previous appeal from an order dated August 10, 2006, in which the Supreme Court addressed the issue of conversion, by reason of the Hamlet's failure to perfect that appeal, precludes our review of that issue on the Hamlet's cross appeal from the order dated May 5, 2006, in which the same issue was decided. That contention is incorrect. As a general rule, we do not consider issues that were raised, or could have been raised, in a previous appeal which was dismissed for lack of prosecution, although we have inherent jurisdiction to do so (*see Bray v Cox*, 38 NY2d 350 [1976]; *DiGiaro v Agrawal*, 41 AD3d 764, 765 [2007]). Here, however, the opposite situation is presented. The order and the judgment under review in appeals No. 1 and 2 were entered in May 2006, while the dismissed appeal was from a subsequent order entered in August 2006. While the better practice would have been to withdraw the subsequent appeal, the Hamlet is not precluded from raising its arguments with respect to the conversion cause of action on the present cross appeal, which is taken from the earlier order and judgment (*cf. Rubeo v National Grange Mut. Ins. Co.*, 93 NY2d 750, 753-754 [1999]).

The Hamlet's argument that the defendants' motions for leave to renew should have been denied is similarly without merit. "A motion for leave to renew is addressed to the sound discretion of the court" (*Matheus v Weiss*, 20 AD3d 454, 454-455 [2005]; *see Lardo v Rivlab Transp. Corp.*, 46 AD3d 759 [2007]; *Mi Ja Lee v Glicksman*, 14 AD3d 669, 670 [2005]). In the circumstances presented here, the Supreme Court did not exercise that discretion improvidently in granting leave to renew (*see Matter of Gold v Gold*, 53 AD3d 485, 487 [2008]; *Matter of Surdo v Levittown Pub. School Dist.*, 41 AD3d 486, 486-487 [2007]; *Lawman v Gap, Inc.*, 38 AD3d 852, 853 [2007]).

We, therefore, address the merits.

## IV

The Hamlet's first, third, and fifth causes of action assert, on contract and quasi contract theories, that Northeast, Pav-Co, Fehr, and Fidelity are liable to it for the Environmental Fund fees and engineering costs that it paid to the Town. For the reasons that follow, we agree.

## A. Northeast

■ The terms of the excavation agreement applicable to the responsibility for the payment of Environmental Fund fees are clear and unambiguous. The agreement requires Northeast to pay "any municipal fee (i.e., the Town of Brookhaven Joseph Macchia Environmental Preservation Capital Reserve Fund) directly to the Town." It further provides that Northeast will hold the Hamlet harmless "from any fee responsibility for taking material off site" and that the fee "is to be paid pursuant to Town of Brookhaven requirements." It is undisputed that Northeast failed to do that and that the Hamlet paid, in its stead, the sum of $990,000 in Environmental Fund fees and $50,000 in related engineering costs. On this basis, the Hamlet demonstrated, to that extent, its prima facie entitlement to judgment as a matter of law against Northeast on the first cause of action sounding in breach of contract.

In opposition, Northeast argued only that a triable issue of fact exists with regard to the extent of the alleged over-excavation, and hence, that the amount of the Environmental Fund fees owed to the Town has not been finally determined. In this regard, Northeast is partially correct. The agreement provides that Northeast will pay the required fees and costs "pursuant to Town of Brookhaven requirements." Since the Town required that payments in the amount of $1,040,000 be made, and Northeast does not dispute that the Hamlet made those payments, Northeast failed to raise a triable issue of fact sufficient to defeat that branch of the Hamlet's cross motion which was for summary judgment against it on the first cause of action sounding in breach of contract in the sum of $1,040,000.

The record does not reflect, however, that the Commissioner of the Town of Brookhaven Department of Planning, Environment and Development (hereinafter the Commissioner), who is the responsible official under the Town's Environmental Fund law, made any final determination with respect to the amount of Environmental Fund fees that will ultimately be due with respect to the excavation at issue here. As a result, Northeast's obligation may be greater than the amounts that the Hamlet has already paid. Thus, the Hamlet failed to establish its entitlement to judgment as a matter of law on its first cause of action with respect to Environmental Fund fees and engineering costs in excess of the $1,040,000 it already paid. Its claim in that regard must therefore be severed and summary judgment

denied. Moreover, in the event the Commissioner determines that the fees and costs required by the Town are less than the amount already paid by the Hamlet, Northeast will be entitled to correction of the judgment (*see* CPLR 5019).

■ Since Northeast's obligation to pay the Environmental Fund fees and engineering costs is contractual, the Hamlet's causes of action sounding in quasi contract should have been dismissed insofar as asserted against Northeast. The existence of a valid and enforceable written contract covering a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter (*see Goldman v Metropolitan Life Ins. Co.*, 5 NY3d 561, 572 [2005]; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 388-389 [1987]; *R.I. Is. House, LLC v North Town Phase II Houses, Inc.*, 51 AD3d 890, 896 [2008]). In light of Northeast's direct liability for the Environmental Fund fees and engineering costs under the excavation agreement, the Hamlet may not recover the same fees and costs from Northeast under the third cause of action alleging unjust enrichment and the fifth cause of action sounding in equitable subrogation (*see R.I. Is. House, LLC v North Town Phase II Houses, Inc.*, 51 AD3d at 896).

B. Pav-Co

Recognizing that it has no contract, and hence, no contractual privity with Pav-Co upon which to base a breach of contract claim, the Hamlet proposes three quasi-contractual theories upon which to predicate Pav-Co's liability for the Environmental Fund fees and engineering costs. First, it asserts that Pav-Co was a joint venturer with Northeast in the performance of the excavation agreement. Second, it argues that its relationship with Pav-Co is sufficiently close to privity that it can assert a breach of contract claim. Third, it claims to be equitably subrogated to the rights of the Town under the payment and performance bonds. Although the Hamlet's first two theories are without merit, it did establish its entitlement to judgment as a matter of law against Pav-Co on the ground of equitable subrogation for the amount of the Environmental Fund fees and related engineering costs it paid to the Town.

(1) Joint Venture

■ The Hamlet contends that the first and second payment bonds and the performance bond established that Pav-Co and Northeast were joint venturers, and as such, were jointly and severally liable to the Town for the Environmental Fund fees and engineering costs. In support of its cross motion for sum-

mary judgment, the Hamlet submitted a statement pursuant to local court rules containing facts it claimed to be "undisputed," including an assertion that Northeast and Pav-Co had "entered into either a joint venture/partnership agreement, subcontract, or similar arrangement." In response, Northeast characterized this assertion as "substantially accurate," adding only that "it was the Plaintiffs themselves that suggested Northeast enter [into] a joint venture with Pav-Co because the Plaintiffs knew that Northeast by itself would be unable to secure the Performance Bond." Zorn, in his deposition testimony, subsequently denied the existence of a joint venture and characterized the agreement as simply requiring Pav-Co to pay the Town any money that it was obligated to pay Northeast for the material it removed from the site. Pav-Co's principal, Fehr, also denied ever entering into a joint venture agreement, and averred that "the monies to be paid by Pav-Co would be dedicated by Northeast for the payment of [the Environmental Fund fees]." We find that, contrary to the Hamlet's contention, the payment and performance bonds did not establish the Hamlet's prima facie entitlement to judgment as a matter of law against Pav-Co on the issue of whether a joint venture had been created.

Initially, Pav-Co is not bound by Northeast's statement that the Hamlet was "substantially accurate" in asserting the existence of a joint venture. The Hamlet's assertion and Northeast's response were contained in statements made by the attorneys for those parties that were contained in papers submitted and filed pursuant to local court rule. Since the term "joint venture" is a legal conclusion which must be supported by evidentiary fact, the attorneys' characterization of the relationship between Northeast and Pav-Co was not admissible for the purpose of determining this issue under a summary judgment standard (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Menekou v Crean*, 222 AD2d 418, 420 [1995]).

"The essential elements of a joint venture are an agreement manifesting the intent of the parties to be associated as joint venturers, a contribution by the coventurers to the joint undertaking (i.e., a combination of property, financial resources, effort, skill or knowledge), some degree of joint proprietorship and control over the enterprise; and a provision for the sharing of profits and losses" (*Kaufman v Torkan*, 51 AD3d 977, 979[2008] [internal quotation marks omitted]; *see Tilden of N.J. v Regency Leasing Sys.*, 230 AD2d 784, 785-786 [1996]; *Ackerman v Landes*, 112 AD2d 1081, 1082 [1985]).

"The ultimate inquiry is whether the parties have so joined their property, interests, skills and risks that for the purpose of the particular adventure their respective contributions have become as one and the commingled property and interests of the parties have thereby been made subject to each of the associates on the trust and inducement that each would act for their joint benefit" (*Matter of Steinbeck v Gerosa*, 4 NY2d 302, 317 [1958] [internal quotation marks omitted]).

Here, contrary to the Hamlet's contention, the payment and performance bonds did not establish all the essential elements of a joint venture agreement between Pav-Co and Northeast. While the various bonds evidence the joint assumption of certain obligations incident to the excavation work, they do not establish the relative contributions of Pav-Co and Northeast to a joint undertaking, nor do they contain any provision for the sharing of profits and losses, as they must in order to establish a joint venture (*see Kaufman v Torkan*, 51 AD3d at 979). Thus, the payment and performance bonds did not establish "such an amalgam of property or interests as would create a joint venture" under the circumstances presented here (*Matter of Steinbeck v Gerosa*, 4 NY2d at 317), and judgment against Pav-Co cannot be predicated upon this theory.

(2) Relationship Approaching Privity

■ In a second attempt to impose liability on Pav-Co, the Hamlet argues that its relationship with Pav-Co was sufficiently close to privity that Pav-Co may be liable to it for breach of contract. Contrary to this contention, the Hamlet failed to make a prima facie showing that it shared a relationship with Pav-Co approaching privity sufficient to sustain its claim.

Liability for breach of contract does not lie absent proof of a contractual relationship or privity between the parties (*see Simplex Grinnell v Ultimate Realty, LLC*, 38 AD3d 600 [2007]; *M. Paladino, Inc. v Lucchese & Son Contr. Corp.*, 247 AD2d 515 [1998]). Generally, a subcontractor is in privity with the general contractor on a construction project and is not in privity with the owner, even if the owner benefitted from the subcontractor's work (*see Sybelle Carpet & Linoleum of Southampton v East End Collaborative*, 167 AD2d 535, 536 [1990]; *see also Sky-Lift Corp. v Flour City Architectural Metals*, 298 AD2d 214 [2002]).

Here, it is undisputed that Northeast entered into a written excavation agreement with the Hamlet, to which Pav-Co was not a party. Pav-Co and Northeast entered into a separate, oral agreement to which the Hamlet was not a party. Thus, in keep-

ing with the general rule, Pav-Co was not in privity with the owner of the project, the Hamlet, but was a subcontractor in privity with the general contractor, Northeast.

The Hamlet argues that, notwithstanding the general rule, a subcontractor which undertakes to perform the contractual obligation of another can be held liable to the project owner for breach of that contract. The Hamlet contends that Pav-Co undertook to perform the excavation work and to pay the Environmental Fund fees under the payment and performance bonds, and thus, became directly liable to the Hamlet for any breach. We are not persuaded by this argument, however, because the Hamlet is not a party to the payment and performance bonds and Pav-Co's obligations under those bonds flow directly to the Town.

Alternatively, the Hamlet argues that Pav-Co's obligations under the payment and performance bonds were sufficient to establish a relationship approaching privity. In support of this argument, the Hamlet relies upon the rule that proof of a relationship " 'so close as to approach that of privity' " may be a valid predicate for imposing liability upon a defendant for negligent misrepresentations that harm noncontracting parties (*Credit Alliance Corp. v Arthur Andersen & Co.*, 65 NY2d 536, 546 [1985], quoting *Ultramares Corp. v Touche*, 255 NY 170, 182-183 [1931]; *see Ossining Union Free School Dist. v Anderson LaRocca Anderson*, 73 NY2d 417, 419 [1989]; *Metral v Horn,* 213 AD2d 524, 526 [1995]). The Hamlet's cause of action against Pav-Co, however, is not premised upon a negligent misrepresentation. Accordingly, the Hamlet failed to establish the elements of a relationship with Pav-Co approaching privity to the extent necessary to sustain its claim that Pav-Co is liable on Northeast's contract.

(3) Equitable Subrogation

■ The Hamlet's final attempt to establish a contract claim against Pav-Co is based upon Pav-Co's liability to the Town under the payment and performance bonds. Although the Hamlet is not a party to those bonds, it asserts that, having paid to the Town the Environmental Fund fees and engineering costs guaranteed by the bonds, it is entitled, as the equitable subrogee of the Town, to recover from Pav-Co the funds it has paid to the Town. Although the Hamlet's argument is a novel one, we conclude that it is meritorious and that the Hamlet is entitled to judgment against Pav-Co on this ground. The doctrine of equitable subrogation

"is broad enough to include every instance in which one party pays a debt for which another is primarily answerable and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability" (*Gerseta Corp. v Equitable Trust Co. of N.Y.*, 241 NY 418, 425-426 [1926]; *see National Granite Tit. Ins. Agency v Cadlerock Props. Joint Venture*, 5 AD3d 361, 362 [2004]).

As an equitable doctrine, subrogation is designed to promote justice, and thus, is dependent upon the particular relationship of the parties and the nature of the controversy in each case (*see Matter of Costello v Geiser*, 85 NY2d 103, 109 [1995]). Considering the circumstances here, we are satisfied that, insofar as the first payment bond and the performance bond are concerned, the Hamlet has satisfied all the requisite elements of its equitable subrogation claim and thus established its prima facie entitlement to judgment as a matter of law against Pav-Co for the Environmental Fund fees and engineering costs it paid to the Town.

In its capacity as a principal under the first payment bond and the performance bond, Pav-Co agreed that it would pay the Environmental Fund fees and engineering costs directly to the Town. "Surety bonds—like all contracts—are to be construed in accordance with their terms" (*Walter Concrete Constr. Corp. v Lederle Labs.*, 99 NY2d 603, 605 [2003]; *see Incorporated Vil. of N. Hills v AVR Links Dev. Corp.*, 33 AD3d 588 [2006]). The first payment bond explicitly bound Pav-Co to pay up to the sum of $500,000 with reference to "fees for the removal of materials" from the Hamlet site. The performance bond expressly incorporated by reference all of the terms, regulations, and conditions imposed by the Town in connection with the construction and excavation at the Hamlet site, which necessarily included the obligation to pay the Environmental Fund fees and engineering costs (*see Rice Mohawk US Constr. Co., Ltd. v Sturdy Concrete Co., Corp.*, 40 AD3d 1065, 1066 [2007]; *Peter Scalamandre & Sons v Village Dock*, 187 AD2d 496 [1992]).

In satisfying Pav-Co's obligation to the Town, the Hamlet acted "under compulsion or for the protection of some interest" of its own (*Gerseta Corp. v Equitable Trust Co.*, 241 NY at 425-426). As the developer of a 177-unit residential development,

the Hamlet had an undeniable interest in the timely completion and approval of the project. That interest was threatened when the Town withheld certificates of occupancy and stopped work on the project by reason of the alleged over-excavation. In order to address this threat, the Hamlet paid the Town the sums of $990,000 in Environmental Fund fees and $50,000 in engineering costs, and thereby satisfied the Town's condition for permitting development work to resume. The payments were made, therefore, for the purpose of protecting the Hamlet's interest in the completion of the project.

Finally, the Environmental Fund fees and the engineering costs were obligations "which in equity and good conscience should have been discharged by" Pav-Co (*Gerseta Corp. v Equitable Trust Co.*, 241 NY at 425). Pav-Co agreed, both as a principal on the performance bond and in its oral contract with Northeast, to pay the Environmental Fund fees and engineering costs required by the Town. In return, Pav-Co took possession of the fill, a valuable commodity. Pav-Co thus received the benefit of its bargain. The Hamlet, by contrast, both paid the fees and costs required of it and otherwise lost the ability to recover the value of that commodity, which would thus enable it to recover the fees and costs it had paid. In "equity and good conscience," therefore, the Hamlet should be able to recover the value of its payments to the Town from Pav-Co.

In response, Pav-Co argues that the Hamlet is barred from relying on equitable subrogation because, as the owner of the property, it was primarily liable for the Environmental Fund fees and engineering costs due to the Town and, therefore, was merely satisfying its own debt in paying those fees and costs. Pav-Co's argument in this regard, however, misreads the authority upon which it relies, *Pathe Exch., Inc. v Bray Pictures Corp.* (231 App Div 465, 468 [1931]), which is inapposite here.

In *Pathe,* the Appellate Division, First Department enunciated the rule that "[s]ubrogation is an equitable remedy not given to one who merely pays his own debt" (*id.* at 469). The issue in *Pathe,* however, was whether Pathe Exchange, Inc. (hereinafter Pathe), a film distributor which had entered into a contract with Bray Pictures Corp. (hereinafter Bray), a producer, to distribute its film, could recover in equitable subrogation from Bray certain sums that it had paid in satisfaction of Bray's obligations to Cinema Finance Corp., which had funded Bray's production of the film. In denying Pathe's equitable subrogation claim, the court recognized that "Pathe was not

paying the debt or obligation of Bray to Cinema, but was satisfying merely its own obligation to Bray, which had been assigned by the latter to Cinema" (*id.* at 468). Thus, it was Pathe's contractual obligation to Bray that barred Pathe's equitable subrogation claim, not any obligation due Cinema from Pathe.

Here, the Hamlet had no contractual obligation to Pav-Co whatsoever, and its contractual obligation to Northeast had been satisfied by Pav-Co's removal of the fill. Thus, unlike Pathe, the Hamlet was not satisfying a debt to Pav-Co by paying Pav-Co's obligation to the Town. Rather, the Hamlet was paying Pav-Co's obligation to the Town, an obligation for which Pav-Co had already been compensated by the Hamlet. In these circumstances, the fact that the Hamlet may have been initially responsible to the Town for the Environmental Fund fees and engineering costs is irrelevant and does not bar the Hamlet from recovering against Pav-Co, as Pav-Co contends.

In this regard, the Hamlet is akin to the grantor of real property that is subject to a mortgage. Although the grantor bore the initial obligation to the mortgagee, the conveyance creates a relationship in the nature of principal and surety, making the grantee primarily liable on the debt and the grantor secondarily liable (*see Paine v Jones*, 76 NY 274, 278 [1879]; *Wagoner v Brady*, 221 App Div 405, 406 [1927]). Although the owner nevertheless remains liable on the note, absent a novation, the doctrine of equitable subrogation permits the grantor to recover from the grantee the sums the grantor has paid to satisfy the mortgage debt for the grantee (*see Matter of Oster*, 258 App Div 930 [1939]), as it does where a mortgagee satisfies an unknown, intervening lien (*see Wagner v Maenza*, 223 AD2d 640, 641 [1996]).

On this basis, the Hamlet thus established its prima facie entitlement to judgment as a matter of law with respect to its fifth cause of action, sounding in equitable subrogation, insofar as asserted against Pav-Co on the first payment bond and the performance bond. The same cannot be said, however, of the Hamlet's claim with respect to the second payment bond. Pav-Co is not a principal under the second payment bond; the principal on that bond is All County. Apart from the presence of the signature of the defendant Fehr's son, as president of All County, on the second payment bond, the record does not provide any evidence as to the relationship between Pav-Co and All County. The Hamlet failed to carry its burden, therefore, with respect to its equitable subrogation claim under the second

payment bond, and that branch of its motion which was for summary judgment on that claim, accordingly, should have been denied.

In response to the Hamlet's prima facie showing with respect to the performance bond and the first payment bond, Pav-Co's obligation, if it is to avoid the entry of judgment against it, is to demonstrate the existence of a material and triable issue of fact (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). We conclude that Pav-Co raised such an issue with respect to the first payment bond, but has not done so with respect to the performance bond.

Generally, delivery and receipt of a bond constitutes sufficient approval and acceptance of it (*see Bostwick v Van Voorhis*, 91 NY 353, 359-360 [1883]). Here, however, the Brookhaven Town Code requires that the bond be "approved by the Town Attorney . . . in an amount to be specified by the Planning Board" (Brookhaven Town Code § 53-5). Fehr averred that the Town did not accept the first payment bond. Gregg Kelsey, the Assistant Town Engineer, testified at his deposition that he had no knowledge of any bond being cancelled or returned to the maker, but explained that a resolution of the Town Board "typically" was required to accept a bond, and he had not seen a resolution with respect to the second payment bond. The parties have not produced a Town Board resolution or other evidence establishing the Town Board's acceptance of the first and second payment bonds. Thus, Pav-Co raised a material issue of fact whether the Town Board had accepted those bonds pursuant to the requirements of the Town Code sufficient to defeat the Hamlet's summary judgment motion insofar as it is premised upon Pav-Co's liability under the first payment bond (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

Pav-Co did not raise a triable issue of fact, however, with regard to the Town's acceptance of the performance bond. In fact, Pav-Co and Fehr produced and appended to their motion papers a resolution of the Town Board dated May 22, 2003 which accepted the performance bond, as amended. The Town Attorney had required the parties to accept the amendment, which renamed the performance bond a "restoration bond" and contained the additional proviso that Fidelity, as surety, was obligated to restore the site in the event that the principals Northeast and Pav-Co failed to perform the excavation work in accordance with town requirements. As noted above, the performance bond expressly incorporated all town requirements in connec-

tion with the excavation of the site, and thus, necessarily bound the principals—and the surety Fidelity upon their default—to pay the Environmental Fund fees and engineering costs. Thus, we find no merit to Pav-Co's contention that the Board failed to accept a performance bond which imposed the primary obligation on Pav-Co for the fees and engineering costs. Accordingly, Pav-Co failed to raise a triable issue of fact in opposition to the Hamlet's motion for summary judgment on the fifth cause of action for equitable subrogation insofar as asserted against Pav-Co on the performance bond.

C. Fehr

Defendant Fehr argues that he is not personally liable as a principal on the first payment bond or the performance bond because he signed those bonds in his capacity as an officer of the corporate entity Pav-Co. We agree that the Hamlet failed to adduce any evidence demonstrating its entitlement to pierce the corporate veil so as to reach the personal assets of Fehr under the first payment bond or the performance bond (*see Michaels Elec. Supply Corp. v Trott Elec.*, 231 AD2d 695 [1996]). Additionally, as discussed above, a triable issue of fact exists as to whether the Town accepted the first payment bond. Accordingly, our holding that Pav-Co is liable under the doctrine of equitable subrogation as a principal on the performance bond is limited to the corporate entity Pav-Co, and any judgment on the performance bond may not be satisfied from Fehr's personal assets.

Fehr signed the second payment bond in his individual capacity as a surety, guaranteeing payment by All County, as principal, for the payment of the sum of $1,500,000 in Environmental Fund fees. As discussed above, however, a triable issue of fact exists as to whether the Town accepted the second payment bond. Accordingly, Fehr raised a triable issue of fact sufficient to defeat that branch of the Hamlet's motion which was for summary judgment on the fifth cause of action for equitable subrogation against Fehr insofar as it was premised upon his individual liability as surety under the second payment bond.

D. Fidelity

In its order dated May 5, 2006, the Supreme Court, upon converting Fidelity's motion pursuant to CPLR 3211 (a) (1), (5) and (7) to dismiss the complaint insofar as asserted against it into a motion for summary judgment dismissing the complaint insofar as asserted against it, denied the motion and granted that branch of the Hamlet's cross motion which was for sum-

mary judgment against Fidelity, as surety, on the performance bond. On May 30, 2006, judgment was entered thereon. In an order dated May 10, 2007, the Supreme Court, inter alia, vacated the judgment against Fidelity on the ground that triable issues of fact existed concerning Fidelity's liability under the performance bond but, in effect, denied Fidelity's motion for leave to renew its prior converted motion for summary judgment dismissing the complaint insofar as asserted against it. Fidelity appeals and the Hamlet cross-appeals from so much of the order dated May 10, 2007 as is adverse to each of them, each asserting entitlement to summary judgment in its favor. We conclude that the Hamlet is entitled to summary judgment holding Fidelity conditionally liable as surety on the performance bond.

Fidelity challenges the Hamlet's equitable subrogation claim against it for some of the same reasons advanced by Pav-Co. Fidelity contends that the Town never accepted the performance bond because it was renamed a "restoration bond" and that, in any event, the performance bond only obligated it to pay the cost of restoring the premises in the event of default by the contractor. Contrary to these contentions, as shown above, the Town Board issued a resolution adopting the performance bond which, as amended, did not absolve Fidelity of its conditional liability as surety for the payment of the Environmental Fund fees and engineering costs, but rather expanded Fidelity's obligations to include a requirement that it restore the site in the event of breach by the principals. Fidelity also argues that the Hamlet cannot recover under the doctrine of equitable subrogation because it was satisfying its own debt when making payments to the Town. As discussed above, however, the Hamlet was paying the obligations of Northeast and Pav-Co, obligations for which Fidelity was conditionally liable as surety under the performance bond.

The judgment entered May 30, 2006 held Pav-Co, Fehr, Northeast, and Fidelity "jointly and severally" liable in the amount of the Environmental Fund fees and engineering costs paid by the Hamlet to the Town. Fidelity, however, as surety on the performance bond, is liable only in the event of default of the principals after attempts to collect from them have failed (*see Chemical Bank v Meltzer*, 93 NY2d 296, 302-303 [1999]). A "surety is chargeable only according to the strict terms of its undertaking" (*Lynbrook Glass & Architectural Metals Corp. v Elite Assoc.*, 225 AD2d 525, 526 [1996]). Here, the performance

bond provides that Fidelity's obligations under it are void in the event that the principals Northeast and Pav-Co pay the applicable fees and costs. Thus, the judgment must be modified to reflect Fidelity's conditional liability on the bond.

## V

In addition to its claims with regard to the Environmental Fund fees and engineering costs, the Hamlet alleges that the defendants are liable for damages in conversion under the second cause of action and for unjust enrichment under the third cause of action because they removed more soil from the site than the contract permitted. The Supreme Court initially denied the defendants' separate motions to dismiss, or for summary judgment dismissing, these causes of action, rejecting the defendants' argument that the conversion claim was duplicative of the breach of contract cause of action. Later, however, after converting the defendants' motions to dismiss into summary judgment motions, the Supreme Court denied those branches of the motions which were for summary judgment dismissing the unjust enrichment claim, but granted those branches of the defendants' motions which were for summary judgment dismissing the conversion claim on the ground that the soil was not a specific, identifiable item and, therefore, could not be the subject of a conversion claim. We conclude, to the contrary, that the Hamlet is entitled to summary judgment on the issue of Northeast's and Pav-Co's liability for conversion, but find that triable issues of fact were raised with respect to the amount of material converted and the resulting damages. The Hamlet also established its prima facie entitlement to judgment as a matter of law on the issue of Pav-Co's liability for unjust enrichment. As noted above, however, this quasi contract cause of action is not available against Northeast, which was subject to a contractual duty not to over-excavate the site.

 Initially, the Supreme Court correctly determined that the conversion and breach of contract causes of action were not duplicative.* "[A] claim of conversion cannot be predicated on a mere breach of contract" (*MBL Life Assur. Corp. v 555 Realty Co.*, 240 AD2d 375, 376 [1997]). However, "[t]he same conduct which constitutes a breach of a contractual obligation may also constitute the breach of a duty arising out of the contract rela-

---

* Because, as noted above, Northeast is the only defendant in privity with the Hamlet, the question of duplicative causes of action applies only to Northeast.

tionship which is independent of the contract itself" (*Dime Sav. Bank of N.Y. v Skrelja*, 227 AD2d 372, 372 [1996] [internal quotation marks omitted]; *see Bender Ins. Agency v Treiber Ins. Agency*, 283 AD2d 448, 450 [2001]; *Apple Records v Capitol Records*, 137 AD2d 50, 55 [1988]). Where it does, "a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract" (*North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171, 179 [1968]; *see Sommer v Federal Signal Corp.*, 79 NY2d 540, 551 [1992]; *Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987]; *Rich v New York Cent. & Hudson Riv. R.R. Co.*, 87 NY 382, 398 [1882]). Here, it does.

Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights (*see State of New York v Seventh Regiment Fund*, 98 NY2d 249, 259 [2002]; *DiMarco v Baron Lincoln Mercury, Inc.*, 24 AD3d 409, 411 [2005]). Here, the excavation agreement required that Northeast haul away "all excess material pursuant to the approved plan," and provided that Northeast "shall not over excavate." The approved plan established that the extent of the excavation and removal would be "1.65 million cubic yards." The excavation agreement thus does more than establish Northeast's contractual duty to refrain from over-excavating. It not only gives rise to a breach of contract claim to the extent that Northeast has done so but, in addition, it defines Northeast's rights in the excavated material as being limited to the amount of excavation provided for in the approved plan. As a result, Northeast has no rights in any material taken in excess of those limitations and, consequently, it is subject to a conversion claim, based upon its alleged unauthorized assumption of the right of ownership with respect to that material. Since the two causes of action thus rest on separate duties owed by Northeast to the Hamlet, they are not duplicative.

To establish the conversion that it alleges, the Hamlet must demonstrate " 'legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question . . . to the exclusion of the plaintiff's rights' " (*Castaldi v 39 Winfield Assoc.*, 30 AD3d 458, 458 [2006], quoting *Batsidis v Batsidis*, 9 AD3d 342, 343 [2004]; *see Independence Discount Corp. v Bressner*, 47 AD2d 756, 757 [1975]; *see also Thyroff v Nationwide Mut. Ins. Co.*, 8 NY3d 283, 288-289

[2007]). Northeast contends that the Hamlet failed to establish both a superior ownership right to the excavated material and that the soil allegedly taken can be specifically identifiable property that can be converted. These contentions are without merit.

Northeast's argument that the Hamlet had no ownership interest in the fill that was removed rests on the provision of the excavation agreement that grants Northeast ownership of "any and all excess material taken from the site in conformance with the approved plan." By expressly incorporating the terms of the approved development plan, however, which prohibits removal of more than 1.65 million cubic yards of fill, the agreement establishes the dividing line between the amount of excess material that Northeast was entitled to keep under the agreement and the amount that it was required to leave at the site. Since the Hamlet retained ownership over the material that was required to be left, the removal of that material constituted an unauthorized exercise of dominion over that material, to the exclusion of the rightful owner, the Hamlet.

Contrary to Northeast's second contention, soil or sand which has been severed from realty becomes personal property and may be subject to an action for conversion (see *Graham v Purcell*, 126 App Div 407 [1908]; *Radway v Duffy*, 79 App Div 116 [1903]; *see also Segar v State of New York*, 111 Misc 2d 1034, 1036 [1981]; *Belott v State of New York*, 49 Misc 2d 501, 503-504 [1966]). Moreover, the fact that the material may have been commingled with like material in which the defendant had a lawful interest does not defeat a claim for damages for the value of the amount wrongfully converted (see *Segar v State of New York*, 111 Misc 2d at 1036 ["the right to excavate gravel that impairs . . . drainage . . . does not, however, include the right to process, retain, and store the gravel for later use on other projects (for which) the State must respond in damages for conversion"]; *see also Samuel v Holbrook, Cabot & Rollins Corp.*, 156 App Div 485, 488 [1913], *affd* 215 NY 641 [1915]).

Accordingly, the Hamlet demonstrated that Northeast and Pav-Co exercised an unauthorized dominion to the exclusion of its rights over identifiable tangible property, consisting of the excavated material, if any, removed in excess of the 1.65 million cubic yards authorized by the approved development plan, as to which the Hamlet, by virtue of its ownership of the property and the terms of the excavation agreement, had legal ownership or an immediate superior right of possession. The Hamlet thus established its prima facie entitlement to judgment as a matter

of law against Northeast and Pav-Co on the issue of those defendants' liability for conversion, as alleged in the second cause of action (*see Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

■ The Hamlet also asserted, under the third cause of action, that Northeast and Pav-Co were unjustly enriched by their taking of fill in excess of the authorized amount. The Hamlet is precluded from proceeding against Northeast on the quasi contract theory of unjust enrichment, however, because the excavation agreement covers the same subject matter, prohibiting Northeast from over-excavating (*see R.I. Is. House, LLC v North Town Phase II Houses, Inc.*, 51 AD3d at 896; *Whitman Realty Group, Inc. v Galano*, 41 AD3d 590, 593 [2007]). On the other hand, Pav-Co's liability under this theory has been established. To prevail on a claim of unjust enrichment, a plaintiff must show that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution (*see Whitman Realty Group, Inc. v Galano*, 41 AD3d at 592-593; *Cruz v McAneney*, 31 AD3d 54, 59 [2006]). This claim, unlike a claim for conversion, does not require proof of a wrongful act by the defendant (*see Cruz v McAneney*, 31 AD3d at 59). Here, the removal of excess fill, a valuable commodity, enriched Pav-Co at the Hamlet's expense, and thus, the Hamlet established its prima facie entitlement to judgment as a matter of law under the third cause of action for unjust enrichment against Pav-Co.

In opposition to the conversion and unjust enrichment claims, Northeast and Pav-Co contend that they raised a triable issue of fact with evidence that the final engineering studies have not been completed to determine the amount of fill removed from the site. Northeast and Pav-Co are correct in arguing that the amount of material removed remains uncertain and, as the Supreme Court noted, additional discovery is necessary with respect to this issue. The amount of the over-excavation is relevant only to the issue of damages, however, as Northeast and Pav-Co's liability is established for any amount in excess of that approved by the site plan. Accordingly, the matter must be remitted to the Supreme Court to determine the amount of material that was converted and, consequently, the damages to which the Hamlet is entitled. Under the circumstances presented here, the measure of damages is the value of the material at the time of the taking, whether liability is premised on a theory of conversion (*see Fantis Foods v Standard Importing*

*Co.*, 49 NY2d 317, 326 [1980]; *Rajeev Sindhwani, M.D., PLLC v Coe Bus. Serv., Inc.*, 52 AD3d 674, 676 [2008]) or unjust enrichment (*see Wolf v National Council of Young Israel*, 264 AD2d 416, 417 [1999]; *Nakamura v Fujii*, 253 AD2d 387, 390 [1998]).

As to Zorn, Fehr, and Fidelity, however, the Hamlet failed to establish its entitlement to judgment as a matter of law on the conversion and unjust enrichment claims.

A corporate officer may be liable for torts committed by or for the benefit of the corporation if the officer participated in their commission (*see Aguirre v Paul*, 54 AD3d 302, 304 [2008]; *Greenway Plaza Off. Park-1 v Metro Constr. Servs.*, 4 AD3d 328, 329-330 [2004]). In addition, the corporate veil may be pierced to impose liability for corporate wrongs upon persons who have "misused the corporate form for [their] personal ends" (*TNS Holdings v MKI Sec. Corp.*, 92 NY2d 335, 340 [1998]) or otherwise "abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice . . . such that a court in equity will intervene" (*Matter of Morris v New York State Dept. of Taxation & Fin.*, 82 NY2d 135, 142 [1993]; *see Millennium Constr., LLC v Loupolover*, 44 AD3d 1016 [2007]).

Here, however, the record is devoid of any evidence that Zorn and Fehr, the principals of Northeast and Pav-Co, respectively, acted in such a fashion in removing the excess material from the site. The Hamlet has thus failed to adduce evidence establishing its entitlement to pierce the corporate veil so as to reach their personal assets (*see Michaels Elec. Supply Corp. v Trott Elec.*, 231 AD2d at 695). Accordingly, upon converting Fehr's motion to dismiss the complaint into one for summary judgment dismissing the complaint, the Supreme Court should have granted those branches of Fehr's motion which were for summary judgment dismissing the second and third causes of action insofar as asserted against him. We thus affirm so much of the judgment as dismissed those causes of action insofar as asserted against Fehr and Zorn.

Fidelity's involvement in the project was solely as surety on the performance bond, and the record is devoid of any evidence that Fidelity converted the fill or was unjustly enriched. Thus, the Supreme Court should have searched the record and awarded summary judgment to Fidelity dismissing the second and third causes of action insofar as asserted against it.

## VI

In conclusion, we hold as follows with respect to each of the four causes of action at issue on this appeal:

On the first cause of action, asserted against Northeast and Pav-Co, Northeast is liable to the Hamlet for breach of contract in the amount of the Environmental Fund fees and engineering costs the Hamlet paid to the Town. Triable issues of fact remain regarding the extent of damages recoverable for Northeast's breach of the provision of the contract prohibiting over-excavation. The breach of contract cause of action should have been dismissed insofar as asserted against Pav-Co, however, for the Hamlet's failure to establish privity between it and Pav-Co.

With respect to the second cause of action, the Hamlet established its entitlement to judgment as a matter of law on the issue of the liability of Northeast and Pav-Co on the cause of action to recover damages for conversion. Triable issues of fact remain, however, on the issue of damages. This cause of action should have been dismissed insofar as asserted against Fehr, Zorn, and Fidelity.

As to the third cause of action, the Hamlet established entitlement to judgment as a matter of law on the issue of Pav-Co's liability on the cause of action alleging unjust enrichment. Again, however, triable issues remain on the issue of damages. This cause of action should have been dismissed insofar as asserted against Northeast, Fehr, Zorn, and Fidelity.

Finally, on the fifth cause of action, the Hamlet, as equitable subrogee of the Town, is entitled to judgment against Pav-Co as principal, and a conditional judgment against Fidelity as surety, on the performance bond in the amount of the Environmental Fund fees and engineering costs that the Hamlet paid the Town. The Hamlet is not entitled to summary judgment with respect to its claims premised on the first and second payment bonds because a triable issue of fact remains whether the Town accepted those bonds. Fehr is not individually liable to the Hamlet as principal on the first payment bond or the performance bond, as he signed those bonds in his capacity as a corporate officer of Pav-Co. Fehr is individually obligated as surety on the second payment bond, but a triable issue exists whether the Town accepted that bond. This cause of action should have been dismissed insofar as asserted against Northeast and Zorn.

The appeal by the defendants Pav-Co Asphalt, Inc. and William Fehr from the order dated May 5, 2006 is dismissed, and the plaintiffs' cross appeal from the order dated May 5, 2006 is dismissed.

The judgment entered May 30, 2006 is modified, on the law and the facts, by deleting the provision thereof which is in favor

of the plaintiffs and against the defendants Northeast Land Development Corporation, Pav-Co Asphalt, Inc., William Fehr, and Fidelity and Deposit Company of Maryland, jointly and severally, in the principal sum of $1,141,607.50, and substituting therefor provisions which are in favor of the plaintiffs and against the defendants Northeast Land Development Corporation and Pav-Co Asphalt, Inc., jointly and severally, in the principal sum of $1,141,607.50, and conditionally in favor of the plaintiffs and against the defendant Fidelity and Deposit Company of Maryland in the principal sum of $1,141,607.50 in the event of the failure of the defendants Northeast Land Development Corporation and Pav-Co Asphalt, Inc. to satisfy the judgment; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, that branch of the plaintiffs' motion which was for summary judgment on so much of the first cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against the defendant Northeast Land Development Corporation is granted, that branch of the plaintiffs' motion which was for summary judgment on so much of the fifth cause of action as was to recover those fees and costs insofar as asserted against the defendant Pav-Co Asphalt, Inc. and conditionally insofar as asserted against the defendant Fidelity and Deposit Company of Maryland is granted, that branch of the converted motion of the defendant Northeast Land Development Corporation which was for summary judgment dismissing the second cause of action insofar as asserted against it is denied, upon searching the record, the plaintiffs are awarded summary judgment on the second cause of action insofar as asserted against the defendant Northeast Land Development Corporation and on the second and third causes of action on the issue of liability insofar as asserted against the defendant Pav-Co Asphalt, Inc. for the value of the amount of material removed, if any, in excess of the 1.65 million cubic yards authorized by the approved development plan, those branches of the converted motion of the defendant Northeast Land Development Corporation which were for summary judgment dismissing the third and fifth causes of action insofar as asserted against it are granted, that branch of the converted motion of the defendant Pav-Co Asphalt, Inc. which was for summary judgment dismissing the first cause of action insofar as asserted against it is granted, those branches of the converted motion of the defendant William Fehr which were for summary judgment dismissing the first, second, and third causes of action

insofar as asserted against him are granted, and the order dated May 5, 2006, made upon renewal and reargument, is modified accordingly.

The order dated May 10, 2007, made upon renewal and reargument, is modified, on the law and the facts, (1) by deleting the provision thereof, upon reargument, adhering to so much of the determination in the order dated March 23, 2007 as denied those branches of the respective motions of the defendants Northeast Land Development Corporation and William Fehr which were to vacate so much of the judgment entered May 30, 2006 as was in favor of the plaintiffs and against them on the fifth cause of action and substituting therefor a provision granting those branches of the respective motions, (2) by deleting the provision thereof, upon reargument, denying those branches of the respective motions of those defendants which were to vacate so much of the order dated May 5, 2006 as denied those branches of their respective motions which were for summary judgment dismissing so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against them and substituting therefor a provision, upon reargument, granting those branches of the respective motions, (3) by deleting the provision thereof, upon reargument, adhering to so much of the determination in the order dated March 23, 2007 as granted those branches of the plaintiffs' cross motion which were for summary judgment on so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against the defendants Northeast Land Development Corporation and William Fehr and substituting therefor a provision, upon reargument, denying those branches of the cross motion, and (4) by deleting the provision thereof vacating so much of the judgment entered May 30, 2006 as was in favor of the plaintiffs and against the defendant Fidelity and Deposit Company of Maryland; as so modified, the order dated May 10, 2007 is affirmed insofar appealed and cross-appealed from, so much of the order dated May 5, 2006 as denied that branch of the converted motion of the defendant William Fehr which was for summary judgment dismissing so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against him is vacated, so much of the order dated March 23, 2007, made upon renewal and reargument, as granted those branches of the plaintiffs' cross motion which were for summary judgment on so much of the fifth

cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against the defendants Northeast Land Development Corporation and William Fehr, and as granted that branch of the motion of the defendant Fidelity and Deposit Company of Maryland which was for summary judgment dismissing the complaint insofar as asserted against it is vacated, and the matter is remitted to the Supreme Court, Nassau County for further proceedings in accordance herewith, and the entry thereafter of an appropriate amended judgment, if necessary.

CARNI, DICKERSON and CHAMBERS, JJ., concur.

Ordered that the appeal by the defendants Pav-Co Asphalt, Inc. and William Fehr from the order dated May 5, 2006 is dismissed; and it is further,

Ordered that the plaintiffs' cross appeal from the order dated May 5, 2006 is dismissed; and it is further,

Ordered that the judgment entered May 30, 2006 is modified, on the law and the facts, by deleting the provision thereof which is in favor of the plaintiffs and against the defendants Northeast Land Development Corporation, Pav-Co Asphalt, Inc., William Fehr, and Fidelity and Deposit Company of Maryland, jointly and severally, in the principal sum of $1,141,607.50, and substituting therefor provisions which are in favor of the plaintiffs and against the defendants Northeast Land Development Corporation and Pav-Co Asphalt, Inc., jointly and severally, in the principal sum of $1,141,607.50, and conditionally in favor of the plaintiffs and against the defendant Fidelity and Deposit Company of Maryland in the principal sum of $1,141,607.50 in the event of the failure of the defendants Northeast Land Development Corporation and Pav-Co Asphalt, Inc. to satisfy the judgment; as so modified, the judgment is affirmed insofar as appealed and cross-appealed from, that branch of the plaintiffs' motion which was for summary judgment on so much of the first cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against the defendant Northeast Land Development Corporation is granted, that branch of the plaintiffs' motion which was for summary judgment on so much of the fifth cause of action as was to recover those fees and costs insofar as asserted against the defendant Pav-Co Asphalt, Inc. and conditionally insofar as asserted against the defendant Fidelity and Deposit Company of Maryland is granted, that branch of the converted motion of the defendant Northeast Land Development Corporation which was

for summary judgment dismissing the second cause of action insofar as asserted against it is denied, upon searching the record, the plaintiffs are awarded summary judgment on the second cause of action insofar as asserted against the defendant Northeast Land Development Corporation and on the second and third causes of action on the issue of liability insofar as asserted against the defendant Pav-Co Asphalt, Inc. for the value of the amount of material removed, if any, in excess of the 1.65 million cubic yards authorized by the approved development plan, those branches of the converted motion of the defendant Northeast Land Development Corporation which were for summary judgment dismissing the third and fifth causes of action insofar as asserted against it are granted, that branch of the converted motion of the defendant Pav-Co Asphalt, Inc. which was for summary judgment dismissing the first cause of action insofar as asserted against it is granted, those branches of the converted motion of the defendant William Fehr which were for summary judgment dismissing the first, second, and third causes of action insofar as asserted against him are granted, and the order dated May 5, 2006, made upon renewal and reargument, is modified accordingly; and it is further,

Ordered that the order dated May 10, 2007, made upon renewal and reargument, is modified, on the law and the facts, (1) by deleting the provision thereof, upon reargument, adhering to so much of the determination in the order dated March 23, 2007 as denied those branches of the respective motions of the defendants Northeast Land Development Corporation and William Fehr which were to vacate so much of the judgment entered May 30, 2006 as was in favor of the plaintiffs and against them on the fifth cause of action and substituting therefor a provision granting those branches of the respective motions, (2) by deleting the provision thereof, upon reargument, denying those branches of the respective motions of those defendants which were to vacate so much of the order dated May 5, 2006 as denied those branches of their respective motions which were for summary judgment dismissing so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against them and substituting therefor a provision, upon reargument, granting those branches of the respective motions, (3) by deleting the provision thereof, upon reargument, adhering to so much of the determination in the order dated March 23, 2007 as granted those branches of the plaintiffs' cross motion which were for summary judgment on

so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against the defendants Northeast Land Development Corporation and William Fehr and substituting therefor a provision, upon reargument, denying those branches of the cross motion, and (4) by deleting the provision thereof vacating so much of the judgment entered May 30, 2006 as was in favor of the plaintiffs and against the defendant Fidelity and Deposit Company of Maryland; as so modified, the order dated May 10, 2007 is affirmed insofar appealed and cross-appealed from, so much of the order dated May 5, 2006 as denied that branch of the converted motion of the defendant William Fehr which was for summary judgment dismissing so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against him is vacated, and so much of the order dated March 23, 2007, made upon renewal and reargument, as granted those branches of the plaintiffs' cross motion which were for summary judgment on so much of the fifth cause of action as was to recover Environmental Fund fees and engineering costs insofar as asserted against the defendants Northeast Land Development Corporation and William Fehr, and as granted that branch of the motion of the defendant Fidelity and Deposit Company of Maryland, which was for summary judgment dismissing the complaint insofar as asserted against it, is vacated.

Ordered that on the appeal and cross appeal from the order dated May 5, 2006 and the judgment entered May 30, 2006, one bill of costs is awarded to the defendants William Fehr and Carl Zorn, payable by the plaintiff, and one bill of costs is awarded to the plaintiffs, payable by the defendants Northeast Land Development Corporation and the defendant Pav-Co Asphalt, Inc.; and it is further,

Ordered that on the appeal and cross appeal from the order dated May 10, 2007, one bill of costs is awarded to the plaintiffs, payable by the defendant Northeast Land Development Corporation, the defendant Pav-Co Asphalt, Inc. and the defendant Fidelity and Deposit Company of Maryland; and it is further,

Ordered that the matter is remitted to the Supreme Court, Nassau County for further proceedings in accordance herewith, and the entry thereafter of an appropriate amended judgment, if necessary.